Marya C. YOUNG, Appellant,

v.

Linda DELANEY, Thomas J. Mack,
and Mona Lyons, Appellees.

No. 92–CV–1023.

District of Columbia Court of Appeals.

Argued Oct. 22, 1993.
Decided Sept. 22, 1994.

Ronald R. Benjamin, for appellant.

Linda Delaney, pro se.

Thomas J. Mack, pro se.

Mona Lyons, pro se.

Before WAGNER, Chief Judge,* and FARRELL and SULLIVAN, Associate Judges.

WAGNER, Chief Judge:

This civil action was commenced by appellant, Marya C. Young, against her former law partners, appellees, Linda Delaney, Thomas J. Mack, and Mona Lyons, for the appointment of a receiver to wind-up the affairs of the former partnership, injunctive relief, and for damages for breach of fiduciary duty. Appellant filed a motion for summary judgment in which she claimed that the undisputed facts supported her claim for court supervision of the wind-up of the partnership's affairs pursuant to D.C.Code § 41–136 (1990) and a declaration of the distributive shares of each former partner. Appellees filed an opposition and cross-motion for summary judgment, contending that appellant's action for an accounting was premature, that she had no evidence supporting her claim of breach of fiduciary duty, and that the interests of the partners on dissolution was controlled by a subsisting agreement. The trial court denied appellant's motion for summary judgment and granted, without opinion, appellees' cross-motion for summary judgment. On appeal appellant argues that the trial court erred in its rulings because: (1) she is not required to defer a demand for an accounting for attorney's fees collected during the wind-up, particularly where the former partners breached their fiduciary duties; (2) there was no agreement governing dissolution which survived the break-up of the partnership; and (3) the terms of the purported agreement relied upon by appellees are so ambiguous as to be unenforceable. We find no error in the trial court's ruling denying appellant's motion for summary

* Judge WAGNER was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on June 14, 1994.

judgment seeking a declaration of the distributive shares of the partners and court supervision of the wind-up of the partnership's affairs. We also hold that an action for the appointment of a receiver to wind-up the affairs of a dissolved partnership is not premature and may be granted in the trial court's discretion when supported by evidence of the wind-up partner's breach of fiduciary duty or irreconcilable dissensions among the former partners which endanger the assets of the partnership. Here, material facts bearing upon the proper exercise of the trial court's discretion in this regard are in dispute which preclude summary judgment on the issue. We affirm the trial court's order denying summary judgment for appellant and reverse its order granting summary judgment to appellees.

## I.

The dispute in this case involves the post-dissolution rights of former members of the law partnership of Lyons, Mack, Delaney & Young (LMDY). Many of the facts are undisputed, but others are not. LMDY was formed on April 17, 1989 by the appellees, Linda A. Delaney, Mona Lyons, and Thomas J. Mack, and Marya C. Young, appellant. The partners operated the partnership initially under an oral agreement under the terms of which they shared profits and losses as follows: 29.15 percent each for Young, Delaney, and Lyons; and 12.55 percent for Mack. The parties' oral agreement also provided that Young, Delaney and Lyons would be entitled to annual draws of $25,000 each against the firm's anticipated profits, and Mack, who worked part time, would be entitled to draws of $12,500.

After a series of meetings concerning the rather bleak income prospects for the firm, Young, Lyons and Delaney held a meeting on November 3, 1989 which resulted in some modification of the parties' earlier partnership agreement. Each side recalls its terms differently. Appellees contend that the parties agreed that henceforth any profit over and above the total of their respective authorized draws would be distributed by majority vote of the partners. According to appellant, the partners agreed only that there would be

"no presumption as to distribution of profits after each partner received the minimum draw." None of the parties contend that any specific agreement was reached covering their respective rights and responsibilities in the event of dissolution.

On July 16, 1990, the partnership was dissolved at the behest of appellee Delaney. Three days later, appellee Lyons set forth in writing her recollection of the agreements purportedly reached at the meeting on November 3, 1989. Lyons' memorandum sets forth, in pertinent part, the following with respect to her understanding of the agreement:

4. In that regard, it seems essential to record the pre-existing terms of our now-defunct partnership. Although we never had a written partnership agreement, we originally contemplated equal equity shares in the practice. In the fall of 1989, however, after a series of particularly bleak partnership meetings, I expressed my unwillingness to continue operating under that assumption. At a meeting on November 3, 1989, attended by me, Lin [Delaney] and Marya [Young], we thereupon agreed to be equal partners only to the extent that each of us was guaranteed equal draws up to $25,000 plus Tom[ ] [Mack's] lesser share. We further agreed that any profit of the practice above the total of those guaranteed sums would be distributed on an annual basis by majority vote of the partners.

On July 20, 1990, appellant expressed her understanding of this aspect of the November 3rd agreement in a reply memorandum. She stated:

4. I generally agree with the statements in paragraph 4 of the Memorandum. However, I wish to clarify that it was my understanding from those meetings only that there was no presumption of equal shares after the $25,000 draw level. I do not specifically recall agreeing that distributions on an annual basis would be by "majority" vote. However, as I have already discussed with Mona [Lyons], I will accept Mona's recollection of events, but consider this point moot since there is no

longer a partnership for purposes of taking a vote.

5. Given the dissolution, I do not believe we have a disagreement of any consequence concerning the meaning of the existing partnership agreement.

In an affidavit in support of her motion, appellant averred that at no time did she agree to distribution of the profits above the minimum draws by majority vote. She stated that appellees Young and Delaney requested the meeting to discuss financial incentives over and above minimum draws for cases for which one partner secured a large recovery or otherwise performed exceptional services. Young's version of this part of the discussion was that she indicated to her partners that the idea for bonuses was a good one, and she accepted a proposal that there would be no presumption as to distribution of profits after receipt of the minimum draw by each of them. According to Young, excess profits did not become an issue prior to dissolution of the partnership because there were none.

On August 14, 1990, appellant Young sent another memorandum to her former partners expressing her view that there was no agreement governing· dissolution and that she would "proceed with [the] wind-down activities under the legal principles applicable in the absence of an agreement." Appellee Delaney wrote appellant a note asking for clarification. The following day, appellant sent another memorandum to her former partners explaining her position as follows:

Our dissolution is governed by the Uniform Partnership Act, because we have no express partnership agreement setting up procedures for dissolution. We are proceeding with a wind-down of the partnership business, not a continuation. But the partnership is not terminated until the wind up is completed; that is, the business is "continued" for the limited purpose of winding down to termination.

\* \* \* \* \* \*

None of us is entitled to extra compensation for servicing cases as part of the wind-down of the partnership.

The former partners, except for Mack, met on August 16, 1990 to discuss how the wind-up should proceed. They agreed ultimately that appellees, Lyons and Delaney, would be responsible for winding-up the partnership's affairs.

Relations between the former partners disintegrated as they proceeded with the wind-up of their business. The parties had a number of disputes which centered on the ability and/or willingness of the individual former partners, particularly Young, to complete the legal services for the dissolved firm's clients and the proper distribution of any fees and assets collected during the wind-up. Subsequently, appellees announced that they had formed a new partnership, Lyons, Mack & Delaney. According to Young, Lyons and Delaney expressed their intentions to send election letters to LMDY's clients advising them of Young's alleged incompetence to handle certain cases if she undertook the work during the wind-up. Appellee Delaney also stated that there was not enough work for three lawyers in any event. Thereafter, Lyons and Delaney sent Young a memorandum dated November 1, 1990 which set forth, *inter alia*, their understanding that Young "[did] not wish to be consulted about, or involved in, any decision-making concerning the wind-up of [the] dissolved partnership, and that [she] refuse[d] to attend any further meetings about the wind-up." On November 5, 1990, appellant filed the present action.

The wind-up partners, Delaney and Lyons, continued to pay themselves draws after dissolution of the partnership. They contend that these payments were in accordance with the "partnership's long-standing policy of tying draws to the actual delivery of legal services and the performance of administrative and management tasks." Young's affidavit, with supporting exhibits, evidences that there never was such a policy and that the parties never operated that way. Delaney and Lyons also asserted that they have deposited income accruing to the former partnership in separate bank accounts and have accounted for, and would continue to account for, the outstanding assets and liabilities of the partnership. They admitted that

they have continued to pay themselves draws, but not in excess of those previously authorized, pursuant to the partnership's "long-standing policy." They also admitted that they have not paid appellant anything since she moved to New York. Appellees asserted that, "[s]ince the dissolution, neither wind-up partner has drawn more than those amounts authorized by the underlying partnership agreement and there has been no distribution of profit by the dissolved partnership." Appellees also acknowledged making, and accurately recording, business expenditures made from the funds of the LMDY partnership "including rent, the salary of an administrative assistant, and other monthly expenses which are necessarily incurred by, and benefit, both the dissolved partnership and our new partnership." They also asserted that "[n]one of the funds which have been collected on behalf of the dissolved partnership have been expended for the *sole* benefit of [appellees'] new partnership or for any other entity or person." (Emphasis added.)

In her complaint, appellant sought appointment of a receiver, compensatory damages for breach of fiduciary duty, an injunction enjoining the appellees from sending election letters to clients and from making false and disparaging remarks about her, and such further relief as might be appropriate. Appellant sought summary judgment on the issue of the distributive shares of the partners and court-directed wind-up of the partnership's affairs. In their opposition and *cross-motion for summary judgment*, appellees contended that the action was premature on the grounds that a partner may not sue a co-partner in an action at law concerning partnership transactions until after an accounting in equity, a settlement, or a promise to pay has been obtained. They also argued that appellant's claim of breach of fiduciary duty is unsupported. In a reply memorandum, appellant contended that the action was not premature as appellees had breached their fiduciary duties by taking annual draws and by using post-dissolution proceeds to pay the expenses of their new firm. The trial court, without a hearing or opinion, entered an order denying appellant's motion for sum-

mary judgment and granting appellees' motion for summary judgment. This appeal followed.

## II.

■ In reviewing a grant of summary judgment, this court uses the same standard of review as the trial court does in ruling on the motion. *Beckman v. Farmer,* 579 A.2d 618, 626 (D.C.1990); *Thompson v. Shoe World, Inc.,* 569 A.2d 187, 189 (D.C.1990). This court must undertake an independent review of the record to determine whether genuine issues of material fact are in dispute and whether the movant is entitled to judgment as a matter of law. *Beckman,* 579 A.2d at 626–27; *Dodek v. CF 16 Corp.,* 537 A.2d 1086, 1092 (D.C.1988). In so doing, we view the record in the light most favorable to the non-moving party, resolving any doubt as to the existence of disputed facts against the movant. *Beckman,* 579 A.2d at 627. It is not the court's function to resolve factual questions, but to determine whether there are any material factual issues. *Dodek,* 537 A.2d at 1092. Thus, the party opposing summary judgment must show that the fact in dispute is material and " 'that there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979) (quoting *International Underwriters, Inc. v. Boyle,* 365 A.2d 779, 782 (D.C.1976)), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). Upon review of the record for disputed facts, the substantive law related to partnerships will define which facts are material. *Beckman,* 579 A.2d at 627. We turn to consideration of the issues raised on appeal in light of these principles and the controlling substantive law.

## III.

■ Appellant argues that the trial court erred in denying her motion for summary judgment seeking a declaration of the individual distributive shares of the former part-

ners.[1] She contends that even if appellees' version of the oral agreement of November 3, 1989 were accepted, it was ambiguous and unenforceable. Moreover, she contends, such an agreement could not survive dissolution of the partnership. On the other hand, appellees contend that the subject agreement is unambiguous and controls the distribution of any post-dissolution profits. Having reviewed the record and the competing versions and interpretations of the purported agreement, we conclude that there are material issues of fact in dispute bearing upon the terms of the purported agreement with respect to the partners' respective shares on dissolution.

■ We note that it is not required that a partnership agreement be in writing. *Cooper v. Saunders–Hunt*, 365 A.2d 626, 628 (D.C.1976). A partnership contract may be oral, and it may be inferred from the parties' conduct. *Id.; see also Beckman, supra*, 579 A.2d at 630. Here, appellees contend that the parties entered a modified oral agreement on November 3, 1989 which survived dissolution of the partnership and which governs distribution of net profits from fees received thereafter.

There is no dispute that appellant and appellees Delaney and Lyons made an oral agreement to be equal partners to the extent of guaranteed equal draws up to $25,000 "plus [Mack's] lesser share [of $12,500]." [2] However, a substantial controversy exists with respect to whether they reached any agreement for distributions over and above the minimum draws. Appellant's evidence will show that the only agreement reached prior to dissolution was that there would be no presumption that the parties would share equally. On the other hand, appellees will introduce evidence that the agreement for distribution of sums over their minimum draws was to be determined by majority vote of the partners on an annual basis.

■ The foregoing disputed factual issue is material to disposition of the case and precludes the grant of summary judgment. The substantive law of partnerships determines which facts are material. *Beckman, supra*, 579 A.2d at 627. That law provides that if there is an agreement for disbursement of fees on dissolution, distributions will be made in accordance therewith. *Id.* at 635; D.C.Code §§ 41–137(a), –117 (1990).[3] Thus, it is essential to determine whether there was an agreement and, if so, its terms. Profits derived from the completion of legal cases or uncompleted transactions after dissolution of a law partnership are assets of the partnership, subject to distribution after dissolution. *Beckman*, 579 A.2d at 636. Under the Uniform Partnership Act, these fees are shared on dissolution in accordance with the rights of the partners in fees in the former partnership. *Jewel v. Boxer*, 156 Cal.App.3d 171, 203 Cal.Rptr. 13, 15 (1984); *see also Beckman*, 579 A.2d at 640 n. 27. Thus, at least with respect to fees exceeding the minimum draws, there is a dispute as to whether the basis for their determination is the subject of some oral agreement or must be established otherwise.

■ However, appellant also argues that even assuming appellees' version of the agreement (*i.e.,* that profits in excess of $25,000 would be distributed pursuant to majority vote annually), as a matter of law, such an agreement would have terminated on dissolution. For this reason, she contends that the

1. Ordinarily, the trial court's denial of a motion for summary judgment is not appealable. However, where one party is granted summary judgment which constitutes a final judgment in the case, and an appeal is taken therefrom, the order denying summary judgment to the adverse party is appealable also. *Kuder v. United Nat'l Bank*, 497 A.2d 1105, 1108 (D.C.1985).

2. The fourth partner, Mack, was not present at the meeting. However, it is undisputed that he subsequently acquiesced in, or affirmed, the "agreement" as recounted by Lyons and Delaney.

3. D.C.Code § 41–137(a) provides, in pertinent part, as follows:

When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartner and all persons claiming through them in respect to their interests in the partnership, *unless otherwise agreed*, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners.
(Emphasis added.)

trial court should have granted her partial summary judgment on this issue. Her argument is premised on the provisions of the Uniform Partnership Act which provide that dissolution terminates the authority of any partner to act for the partnership except as necessary to wind-up partnership affairs or to complete transactions. D.C.Code §§ 41–132, –134(a)(1) (1990). Therefore, she argues that the right of the partners to determine on an annual basis by majority vote of the partners any additional shares payable to the partners ceased on dissolution of the partnership.

The logic of appellant's argument has some appeal. Yet, she seems to acknowledge that partners could by agreement make just that kind of arrangement. In other words, nothing in our partnership law prohibits law partners from establishing by agreement a plan for distribution of certain profits by majority vote of the former members of the dissolved partnership. That being the case, the only question is whether there is any factual dispute about whether the terms purportedly embodied in this particular agreement were intended to continue that type of arrangement after voluntary dissolution.[4]

The intention of the parties with respect to the continuation of such an arrangement after dissolution is not readily discernible from the undisputed evidence. Appellant contends that the agreement advanced by appellees provides that distribution of excess profits was to be determined at annual meetings by a majority vote of the partners. Since the authority of partners to act at annual meetings would cease after dissolution by law, she contends that the parties could not have intended that this arrangement would continue. However, the agreement, as outlined by appellees, does not mention the need for annual meetings of the partners to determine the disposition of excess profits, a factor which might show the intention for the arrangement to cease on dissolution. The doc-uments purporting to reflect the parties' agreement simply reflect that the timing of the distributions would be determined annually by vote of a majority. If these terms form the basis for the parties' agreement, such a provision could be continued and effectuated during the wind-up phase of the dissolved partnership, if the partners so intended. There is no language set forth in appellees' memorandum of understanding of the agreement which addresses explicitly whether the parties intended for the terms to apply on dissolution or only so long as the partnership remained in existence.[5]

■ We regard the intention of the parties in this respect to be material to the interpretation of the purported agreement. Further, that interpretation will depend upon the reasonable inferences to be drawn from the facts established as to its terms and making. In interpreting the contract, the court must ascertain the parties' common intent. Where an ambiguity exists in the language of the agreement or its meaning is doubtful, it must be determined by reference to extrinsic evidence of the conduct of the parties before and after its formation. See Beckman, supra, 579 A.2d at 629–30; see also Jessamy Fort & Ogletree v. Lenkin, 551 A.2d 830, 831 (D.C.1988); Dodek, supra, 537 A.2d at 1093; Holland v. Hannan, 456 A.2d 807, 815 (D.C.1983). The law involving contract interpretation reflects the general principle that summary judgment is probably not appropriate and should be granted sparingly in cases involving motive or intent as material elements. Beckman, 579 A.2d at 629–30. "Our decisions have repeatedly expressed a preference for trial on the merits when interpretation of an ambiguous agreement 'depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.'" Id. at 630 (citations omitted). This principle is applicable here and supports the conclusion that the

4. There is no dispute that the partnership was not dissolved wrongfully, and therefore, after discharge of liabilities, the surplus is used to pay the net amount owing to the individual partners, unless otherwise specified by agreement. See D.C.Code § 41–136 (1990).

5. As appellant points out, the assignment of shares in this manner after dissolution, given the partners ongoing disputes with each other, might place her at some disadvantage. Nevertheless, if it is determined that the parties so intended, we see no prohibition to the agreement's enforcement.

issues must be resolved by the trier of fact before the legal effect can be determined. *See Nader, supra,* 408 A.2d at 42.

■■■■ Of course, a contract is not rendered ambiguous merely because the parties thereto do not agree upon its proper construction. *Clyburn v. 1411 K Street Ltd. Partnership,* 628 A.2d 1015, 1017 (D.C.1993); *Holland, supra,* 456 A.2d at 815. Whether it is ambiguous is a question of law for determination by the court. *Clyburn,* 628 A.2d at 1017. In that connection, in *Burbridge v. Howard Univ.,* 305 A.2d 245, 247 (D.C.1973) (quoting 17A C.J.S. *Contracts* § 294, at 34–35 (1963) (footnotes omitted)), we observed that

> "[A] contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends...."

Applying this principle, we are satisfied that, assuming the accuracy of appellees' version of the November 3rd agreement, as appellant urges us to do, the intention of the parties for its viability after dissolution is in doubt. The intention of the parties will have to be gleaned from extrinsic facts regarding the parties' course of dealing and circumstances surrounding its making. Among these considerations, no doubt, will be the so-called "long-standing policy" of the partnership of tying draws to the delivery of services, an

issue which is also in dispute. Accordingly, we are not convinced that this court can determine as a matter of law that the agreement, if consistent with appellees' account, terminated on dissolution, leaving the distributions of profits realized after dissolution consistent with previous percentages but without provision for distribution of excesses by majority vote.[6] Therefore, the trial court did not err in denying appellant summary judgment on this issue. However, the court did err in granting summary judgment in favor of appellees on the question.

## IV.

■■■■ Appellant also argues that the trial court erred in granting appellees' motion for summary judgment on her request for court supervision of the wind-up of the partnership on the basis of lack of ripeness. She contends that under the Uniform Partnership Act, she was entitled to an accounting at the date of dissolution in the absence of any agreement. *See* D.C.Code § 41–142 (1990). She also argues that she was entitled to this relief in light of the irreconcilable differences among the former partners and the wind-up partners' breach of fiduciary duty in improperly applying assets of the former firm to their new partnership and making distributions of surplus to themselves, to the exclusion of appellant. Appellees take the position that they are not required to account until after completion of all pending cases handled by the former partnership and the wind-up. Only at that time, according to appellees, would appellant be entitled to a complete and final accounting.[7]

---

6. Where there is no agreement for the distribution of profits realized by the partnership after dissolution, the formula in effect at the time of dissolution controls. *Beckman, supra,* 579 A.2d at 640 n. 27; *Jewel, supra,* 203 Cal.Rptr. at 15; *Ellerby v. Spiezer,* 138 Ill.App.3d 77, 92 Ill.Dec. 602, 607, 485 N.E.2d 413, 418 (1985); *see also* D.C.Code § 41–139(2) (1990). Thus, whether the partners entered an agreement for a vote of excess profits which was to control all future dealings between them is a substantial issue for resolution of their dispute.

Appellant identifies other ambiguities in the November 3rd agreement. In light of our disposition of the other issues surrounding the existence of an agreement and its meaning, we need not address these arguments here. We leave to

the trial court on remand consideration of these issues.

7. Appellees contend that appellant raises the claim that they refused to account for the first time on appeal. Issues not raised in the trial court are generally spurned on appeal. *Spencer v. District of Columbia,* 615 A.2d 586, 589 (D.C. 1992); *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967). Appellant points out that she sought court supervision of the wind-up, which necessarily will involve some accounting. Appellant's point seems to be well taken. However, appellant concedes that the action might be premature if she had requested a final accounting. A former partner has a right to an accounting upon dissolution of a partnership, including court intervention if the

In response to appellant's claim that they breached their fiduciary duty, appellees assert that the undisputed facts do not support it.

Under the provisions of the Uniform Partnership Act, "any partner, his legal representative or his assignee, upon cause shown, may obtain winding up by the court." D.C.Code § 41–136. In this jurisdiction, even prior to the adoption of the Act, we had recognized adequate cause for the appointment of a receiver to wind-up the business of the partnership where the record disclosed "that there [were] such irreconcilable disagreements and dissensions between the partners in regard to the conduct of their affairs as to endanger the partnership['s] good will and property." *Creel v. Creel,* 63 App.D.C. 384, 386, 73 F.2d 107, 109 (1934), *cert. denied,* 294 U.S. 723, 55 S.Ct. 551, 79 L.Ed. 1255 (1935). At least upon a " 'showing [of] either a breach of duty on the part of the other partners, or a violation of the agreement of partnership, a receiver will be appointed as a matter of course.' " *Id.* 73 F.2d at 110 (quoting *Reed v. Beals,* 77 Fla. 801, 82 So. 234 (1919)). Other courts have held that receivers can be appointed to prevent dissipation of partnership assets or fraud or mismanagement. *See Hankin v. Hankin,* 507 Pa. 603, 493 A.2d 675, 677 (1985). This is not an exhaustive list of the circumstances under which a receiver may be appointed. However, the circumstances are representative sufficiently for consideration of the claims raised in this case.

 Whether to appoint a receiver is within the discretion of the trial court. *Briegel v. Payne,* 81 U.S.App.D.C. 147, 155 F.2d 424 (1946); *Stainton v. Tarantino,* 637 F.Supp. 1051, 1072 (E.D.Pa.1986). Judicial discretion must rest upon a firm factual foundation and correct legal principles. *In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991). Here, significant facts essential to the trial court's proper exercise of its discretion are genuinely disputed. Among these are appellant's claim that the wind-up partners are improp-

erly excluding her from draws against fees collected, while paying themselves based on a claimed long-standing policy of tying draws to the performance of legal services and their version of a disputed contract. Appellant offers evidence disputing appellees' contentions.

 "Pending cases are uncompleted transactions requiring winding up after dissolution, and are therefore assets of the partnership subject to post-dissolution distribution." *Beckman, supra,* 579 A.2d at 636. Between dissolution and completion of the wind-up, the partners have a fiduciary obligation to hold such assets for the benefit of the other partners. *Id.* Absent an agreement to the contrary, fees must be shared regardless of which partner provides post-dissolution services. *Id.; Jewel, supra,* 203 Cal.Rptr. at 15. Whether appellees acted in derogation of the fiduciary duty owed to appellant in light of these principles will depend in some measure upon the existence and terms of any subsisting agreement. That issue also remains in controversy.

It is undisputed that appellees paid expenses associated with the former partnership and the new partnership out of assets belonging to the former partnership. Of course, partnership property is to be used for partnership purposes only, specifically to pay off first any liabilities to creditors and then the amount due to the respective partners. D.C.Code § 41–137. It does not appear that the trial court, in making its ruling, considered whether the wind-up partners applied the funds of the former partnership in violation of statutory requirements by using them to benefit their newly-formed partnership. This factor would have been pertinent to the proper exercise of the court's discretion in denying summarily appellant's claim for the appointment of a receiver.

Appellant provided in the trial court other evidentiary support for additional grounds upon which she bases her claim that her former partners' conduct warrants court intervention. We need not address them fur-

---

accounting is refused. *Washington Medical Ctr. v. Holle,* 573 A.2d 1269, 1285 (D.C.1990); *see also* D.C.Code § 41–121 (1990). However, what appellant seeks is court supervision of the wind-

up. That issue, including any accounting incident to it, was squarely presented, and accordingly, we address it.

ther because it is plain that those we have considered require reversal of the grant of summary judgment in favor of appellees. On remand, the trial court can review any further evidence in light of the controlling legal principles. Appellant demonstrated at least that genuine factual issues are in dispute which bear upon her claim. Moreover, to the extent that the trial court's decision may be based upon an exercise of discretion, the record fails to disclose that the trial court predicated its ruling on the pertinent legal principles and a firm factual foundation. *See J.D.C., supra,* 594 A.2d at 75.

For the foregoing reasons, the order of the ·trial court denying appellant's motion for summary judgment is affirmed, and its order granting appellees' motion for summary judgment is reversed.