**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 7 Trustee of the Estate of Howrey LLP, *Plaintiff-Appellant*, <br><br> v. <br><br> HOGAN LOVELLS US LLP, *Defendant-Appellee.* | No. 15-16326 <br><br> D.C. No. 3:14-cv-04882-JD |
| ALLAN B. DIAMOND, Chapter 7 Trustee of the Estate of Howrey LLP, *Plaintiff-Appellant*, <br><br> v. <br><br> PILLSBURY WINTHROP SHAW PITTMAN LLP, *Defendant-Appellee.* | No. 15-16327 <br><br> D.C. No. 3:14-cv-04883-JD |

ALLAN B. DIAMOND, Chapter 7
Trustee of the Estate of Howrey
LLP,
          *Plaintiff-Appellant*,

                    v.

SEYFARTH SHAW LLP,
          *Defendant-Appellee*.

No. 15-16328

D.C. No.
3:14-cv-04884-JD

ALLAN B. DIAMOND, Chapter 7
Trustee of the Estate of Howrey
LLP,
          *Plaintiff-Appellant*,

                    v.

PERKINS COIE LLP,
          *Defendant-Appellee*.

No. 15-16329

D.C. No.
3:14-cv-04885-JD

ALLAN B. DIAMOND, Chapter 7
Trustee of the Estate of Howrey
LLP,
          *Plaintiff-Appellant*,

                    v.

NEAL, GERBER & EISENBERG LLP,
          *Defendant-Appellee*.

No. 15-16330

D.C. No.
3:14-cv-04886-JD

ALLAN B. DIAMOND, Chapter 7
Trustee of the Estate of Howrey
LLP,
*Plaintiff-Appellant*,

v.

KASOWITZ BENSON TORRES LLP,
*Defendant-Appellee.*

No. 15-16331

D.C. No.
3:14-cv-04887-JD

ALLAN B. DIAMOND, Chapter 7
Trustee of the Estate of Howrey
LLP,
*Plaintiff-Appellant*,

v.

SHEPPARD MULLIN RICHTER &
HAMPTON LLP,
*Defendant-Appellee.*

No. 15-16332

D.C. No.
3:14-cv-04888-JD

ALLAN B. DIAMOND, Chapter 7
Trustee of the Estate of Howrey
LLP,

*Plaintiff-Appellant*,

v.

JONES DAY,

*Defendant-Appellee.*

No. 15-16333

D.C. No.
3:14-cv-04889-JD

ORDER
CERTIFYING
QUESTIONS TO
THE DISTRICT
OF COLUMBIA
COURT OF
APPEALS

Filed February 27, 2018

Before: Ronald M. Gould and Mary H. Murguia, Circuit
Judges, and Nancy Freudenthal,[*] Chief District Judge.

---

[*] The Honorable Nancy Freudenthal, Chief United States District
Judge for the District of Wyoming, sitting by designation.

# SUMMARY[**]

### Certified Questions

Concluding that the claims of a trustee for the bankruptcy estate of a law firm turned on the answers to unresolved questions of District of Columbia partnership law concerning the scope of the interest, if any, that a partnership has in client matters started at the partnership but completed at another firm, the panel certified the following three questions to the District of Columbia Court of Appeals:

> (1) Under District of Columbia law does a dissociated partner owe a duty to his or her former law firm to account for profits earned post-departure on legal matters that were in progress but not completed at the time of the partner's departure, where the partner's former law firm had been hired to handle those matters on an hourly basis and where those matters were completed at another firm that hired the partner?

> (2) If the answer to question (1) is "yes," then does District of Columbia law allow a partner's former law firm to recover those profits from the partner's new law firm under an unjust enrichment theory?

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

(3) Under District of Columbia law what interest, if any, does a dissolved law firm have in profits earned on legal matters that were in progress but not completed at the time the law firm was dissolved, where the dissolved law firm had been retained to handle the matters on an hourly basis, and where those matters were completed at different pre-existing firms that hired partners of the dissolved firm post-dissolution?

The panel stayed further proceedings, withdrew the case from submission, and directed the Clerk to administratively close the docket pending further order.

---

## COUNSEL

Christopher D. Sullivan (argued), Diamond McCarthy LLP, San Francisco, California; Christopher R. Murray and Michael D. Fritz, Diamond McCarthy LLP, Houston, Texas; for Plaintiff-Appellant.

Shay Dvoretzky (argued) and Emily J. Kennedy, Jones Day, Washington, D.C.; Robert A. Mittelstaedt and Jason McDonnell, Jones Day, San Francisco, California; for Defendant-Appellee Jones Day.

Jonathan W. Hughes and Pamela Phillips, Arnold & Porter LLP, San Francisco, California; Robert Reeves Anderson, Arnold & Porter LLP, Denver, Colorado; for Defendant-Appellee Hogan Lovells US LLP.

David G. Keyko, Pillsbury Winthrop Shaw Pittman LLP, New York, New York; John M. Grenfell and G. Allen Brandt, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California; for Defendant-Appellee Pillsbury Winthrop Shaw Pittman LLP.

Lori L. Roeser, Seyfarth Shaw LLP, Chicago, Illinois, for Defendant-Appellee Seyfarth Shaw LLP.

Ronald A. McIntire and Judith B. Gitterman, Perkins Coie LLP, Los Angeles, California, for Defendant-Appellee Perkins Coie LLP.

Nancy J. Newman, Hanson Bridgett LLP, San Francisco, California; Robert Radasevich, Neal Gerber & Eisenberg LLP, Chicago, Illinois; for Defendant-Appellee Neal Gerber & Eisenberg LLP.

Margaret A. Ziemianek, Kasowitz Benson Torres & Friedman LLP, San Francisco, California; Robert M. Novick, Kasowitz Benson Torres & Friedman LLP, New York, New York; for Defendant-Appellee Kasowitz Benson Torres & Friedman LLP.

Richard W. Brunette and Michael M. Lauter, Sheppard Mullin Richter & Hampton LLP, Los Angeles, California, for Defendant-Appellee Sheppard Mullin Richter & Hampton LLP.

Paulette Brown, President; Eric A. Shumsky, Christopher J. Cariello, and Anjali S. Dalal, Of Counsel; American Bar Association, Chicago, Illinois; for Amicus Curiae American Bar Association.

David C. Tingstad, Beresford Booth PLLC, Edmonds, Washington, for Amici Curiae Various Practitioners and Academics.

## ORDER

Alan B. Diamond, Trustee for Howrey LLP's bankruptcy estate, seeks to recover profits earned from hourly-billed client matters started at Howrey, but completed at other firms that hired the former Howrey partners. He raises both a fraudulent transfer and an unjust enrichment theory of recovery. The viability of both theories turns on the answers to unresolved questions of D.C. partnership law concerning the scope of the interest, if any, that a partnership has in client matters started at the partnership but completed at another firm.

## Certified Questions

Pursuant to D.C. Code § 11-723 we respectfully ask the District of Columbia Court of Appeals to resolve three questions of District of Columbia law that "may be determinative" of this bankruptcy appeal. D.C. Code § 11-723(a):

> (1) Under District of Columbia law does a dissociated partner owe a duty to his or her former law firm to account for profits earned post-departure on legal matters that were in progress but not completed at the time of the partner's departure, where the partner's former law firm had been hired to handle those matters on an hourly basis and where those matters were

completed at another firm that hired the partner?

(2) If the answer to question (1) is "yes," then does District of Columbia law allow a partner's former law firm to recover those profits from the partner's new law firm under an unjust enrichment theory?

(3) Under District of Columbia law what interest, if any, does a dissolved law firm have in profits earned on legal matters that were in progress but not completed at the time the law firm was dissolved, where the dissolved law firm had been retained to handle the matters on an hourly basis, and where those matters were completed at different pre-existing firms that hired partners of the dissolved firm post-dissolution?

Our phrasing of the questions should not restrict the Court's consideration of the issues. The Court may rephrase a question as it sees fit in order to best address the contentions of the parties or the specifics of D.C. law.[1] If the District of

---

[1] The parties framed the issues differently. Appellant, Diamond, would certify the following questions:

(1) Under District of Columbia law, does a dissolved law firm have a property interest in legal matters that are in progress but not completed at the time the law firm is dissolved, when the dissolved law firm had been retained to handle the matters on an hourly basis?

Columbia Court of Appeals resolves these questions we will resolve the issue in our case in accordance with its answers.

## Background

We offer the following statement of the "facts relevant to the questions certified and the nature of the controversy in which the questions arose." D.C. Code § 11-723(c).

Howrey LLP, a law firm organized under D.C. law, faced significant financial difficulties after the economic crisis of 2008. By early 2010 the firm was insolvent, and in March 2011 Citibank prohibited Howrey from using any

---

(2) Would the District of Columbia Court of Appeals adopt section 48 of the Restatement (Third) of Restitution and Unjust Enrichment (2011) and hold that unjust enrichment is available where "a third person makes payment to the defendant to which (as between the claimant and defendant) the claimant has a better legal or equitable right"?

If so, under the District of Columbia law as codified in the Revised Uniform Partnership Action ("RUPA"), D.C. Code §33-101.01 *et seq.*, does a departing partner of a law partnership owe a duty to her former partnership to account for the profits on matters that are in progress but not completed at the time the departing partner brings those matters to a new partnership?

The law firm appellees would certify a single question:

Under D.C. law, does a law firm that dissolves and liquidates in bankruptcy have a property right to profits earned by third-party law firms on hourly-rate matters that clients chose those other firms to handle (either before or after dissolution of the defunct firm)?

cash collateral without permission.  Howrey's partners voted to dissolve the firm effective March 15, 2011.  As part of its dissolution, Howrey's partners amended their partnership agreement to include a "*Jewell* waiver" which would free any departing partner from any obligation to account for profits related to the winding up of unfinished business.[2]  In April of 2011, Howrey's creditors filed an involuntary petition for bankruptcy against the firm.

Partners left Howrey both before and after dissolution of the firm and started to work for other law firms.  In many instances, these former Howrey partners continued to work on client matters that were formerly Howrey business.

In 2013, the bankruptcy estate's Trustee brought adversary proceedings against firms that had hired Howrey partners and had profited from work done on client matters that had been started at Howrey ("defendant firms"), attempting to recover portions of payments made by former Howrey clients for work done on those ongoing matters.[3]  The Trustee presented two different legal theories of recovery depending on whether a partner left before or after Howrey's dissolution.

---

[2] Specifically, the waiver was intended to "expressly waive, opt out of and be in lieu of any rights any Partner or Partnership may have to 'unfinished business' of the Partnership, as that term is defined in *Jewel v. Boxer*, 156 Cal. App. 3d 171 (Cal. Dist. Ct. App. 1984), or as otherwise might be provided in the absence of this provision through interpretation or application of the LLP Act."

[3] The defendant firms include Jones Day; Perkins Coie; Pillsbury, Winthrop, Shaw and Pittman; Sheppard, Mullin, Richter, & Hampton; Neal, Gerber & Eisenberg; Seyfarth Shaw; Hogan Lovells; and Kasowitz, Benson, Torres & Friedman.

To summarize briefly, the Trustee argues that partners who dissociated pre-dissolution had a duty to account for profits earned on ongoing client matters, and that Howrey can recover those profits from the defendant firms under an unjust enrichment theory. The Trustee argues that partners who left after the March 15, 2011 dissolution had a duty to account to Howrey for any profits earned on ongoing client matters, that the *Jewel* waiver constituted a fraudulent transfer of that interest from Howrey to the partners under 11 U.S.C. § 548, and that the Trustee can recover from the defendant firms as subsequent transferees under 11 U.S.C. § 550.

The law firms moved to dismiss the adversary proceedings. The bankruptcy court denied the motion to dismiss the post-dissolution claims on grounds that the unfinished business rule as articulated in *Beckman v. Farmer*, 579 A.2d 618 (D.C. 1990), and *Young v. Delaney*, 647 A.2d 784 (D.C. 1994)—cases involving contingency fee matters—applied with equal force to client matters billed on an hourly basis, and that therefore the Trustee could seek to recover profits from partners who left *after* the *Jewel* waiver passed under a fraudulent transfer theory. The bankruptcy court also held that the Trustee had stated a valid claim for unjust enrichment.

The law firms appealed, and the district court reversed. The district court held that profits generated from ongoing legal matters were not subject to the duty to account where the client had entered into a new retainer agreement with a different firm. For that reason, it rejected both the pre-dissolution unjust enrichment claim and the post-dissolution fraudulent transfer claim.

## Reasons for Certification

Section 404(b)(1) of the Revised Uniform Partnership Act ("RUPA") (D.C. Code § 29-604.07(b)(1)) imposes a duty on a partner "to account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business." Section 603(b) of the RUPA (D.C. Code § 29-606.03(b)) governs the duties of dissociating partners. It holds that "[t]he [dissociating] partner's duty of loyalty under Section 404(b)(1) and (2) and duty of care under Section 404(c) continue only with regard to matters arising and events occurring before a partner's dissociation, unless the partner participates in winding up of the partnership's business."[4]

The Trustee argues that ongoing hourly-billed client matters were "matters arising" before the partner's dissociation, and, hence, the partner had a duty to account for profits earned from those matters.

The defendant firms, in contrast, contend that "matters arising" should be interpreted narrowly to include only work actually performed prior to dissociation. On this interpretation, the duty to account would apply only to

---

[4] We note that D.C. partnership law has been recodified, and there appears to be an internal inconsistency in the cross-references. § 29–606.03 cross-references § 29-604.04(b)(1), but the duty of loyalty appears to have been moved to § 29-604.07(b)(1). Since the D.C. Code, in its essential terms, adopts the RUPA, we assume that this is a scrivener's error. Because the district court and bankruptcy court decisions refer to a yet different codification of the D.C. Code, we adopt the convention of referring to the RUPA codification for sake of clarity. The parties are in agreement that this is the relevant language under dispute.

payments made after dissociation for work performed before dissociation. Our review of District of Columbia case law has found no case resolving this dispute.

If a dissociating partner owes a duty to Howrey to account for profits earned from ongoing client matters that raises an additional question: whether District of Columbia unjust enrichment law allows Howrey to recover those profits from the defendant firms. The District of Columbia Court of Appeals has provided different statements of the requirements for an unjust enrichment claim. Sometimes the Court presents an unjust enrichment claim in terms of specific elements—"(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)). Other District of Columbia decisions describe unjust enrichment differently. For example, in *4934, Inc.* the court stated that "[u]njust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another." *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992); *see also Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005).

The defendant firms argue that under the initially described test, the first element is not satisfied in a case like this, because the benefit—the profits earned on ongoing client matters—was not directly conferred by Howrey on the defendant firms. Rather, the client conferred the benefit. However, as stated, the first element does not explicitly rule out transfers where the benefit flows from the plaintiff to the defendant in an indirect manner through a third party. And

we have found no decisions from the District of Columbia courts that speak to this issue—that is, where an unjust enrichment claim was rejected because the benefit was not directly conferred, or where an unjust enrichment claim was allowed to proceed despite an indirect transfer of the benefit.

Under the test for unjust enrichment as described in the *4934 Inc.* decision, there is no requirement that there be a direct transfer of the benefit from the plaintiff to the defendant. And we note that this is the view adopted in Section 48 of the Restatement (Third) of Restitution and Unjust Enrichment (2011), which states that "[i]f a third person makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment."

There is also an unanswered question under D.C. law about the applicability of the unfinished business rule, as articulated in *Beckman*, 579 A.2d at 636 and *Young*, 647 A.2d at 789, to the facts of this case. The unfinished business rule as described in *Beckman* requires that upon dissolution and winding up of a partnership's business, "any profits derived from completion of such unfinished business inure to the partnership's benefit, even if received after dissolution." 579 A.2d at 636.

In *Beckman* the District of Columbia Court of Appeals held that the unfinished business rule required former partners of a law firm to account for profits earned on matters that were pending at the time of dissolution. *Id. Beckman* involved a three person firm that went into dissolution. *Id.* at 624–25. One of the partners sued the other two partners to recover money earned on a contingency fee matter that was ongoing at the time of dissolution. *Id.* at 625. Prior to

the resolution of the contingency fee matter, the other two partners had started a separate firm. *Id.* Citing a number of cases in other jurisdictions, the *Beckman* court reasoned that "pending cases are uncompleted transactions requiring winding up after dissolution, and are therefore assets of the partnership subject to post-dissolution distribution." *Id.* at 636.

A second District of Columbia Court of Appeals case reached a similar conclusion in *Young v. Delany*. The *Young* court held that "[p]rofits derived from the completion of legal cases or uncompleted transactions after dissolution of a law partnership are assets of the partnership, subject to distribution after dissolution." 647 A.2d at 789. The *Young* court went on to hold that during "dissolution and completion of the wind-up, the partners have a fiduciary obligation to hold such assets for the benefit of the other partners. Absent an agreement to the contrary, fees must be shared regardless of which partner provides post-dissolution services." *Id.* at 792 (internal citation omitted).

*Beckman* and *Young*, however, differ from this case in at least three ways that might bear on the applicability of the unfinished business rule here. First, *Beckman* and *Young* were decided under the UPA, not the RUPA. The RUPA differs from the UPA in that it entitles a partner of a dissolving firm to "reasonable compensation for services rendered in winding up the business of the partnership." RUPA § 401; (D.C. Code § 29-604.01(k)).

Second, *Beckman* and *Young* both dealt with ongoing contingency fee arrangements and not, as here, hourly fee arrangements. There are different interests at stake under hourly as opposed to contingency fee arrangements. For example, under a contingency fee arrangement if there was no duty to account, then work performed by the former firm

would go unpaid. Under hourly arrangements, at least some payment would have been made to the firm for work done on the client's matter, even if other overhead costs associated with recruiting the client or administrative handling of the matter may go uncompensated. No District of Columbia Court of Appeals decision has addressed whether the unfinished business rule would allow recovery of some of the fees paid to a third-party firm under an hourly fee arrangement.

Third, both *Beckman* and *Young* involved partners who took client matters to firms composed entirely of former partners of the dissolving firm and not, as here, pre-existing firms. The equities in *Beckman* and *Young*, therefore, may relevantly differ from the situation here, where an existing large firm takes on a client matter by hiring a partner of a dissolved firm. In resolving such client matters the departing partner will use the resources of the new firm, including its associates and staff. And in such a case it is plausible to say that the client is hiring a new firm rather than remaining with a particular attorney. These three differences give us pause and uncertainty in applying the unfinished business rule, as articulated in *Beckman* and *Young*, to the facts of this case without further guidance from the D.C. courts.

The District of Columbia Court of Appeals' answer to the question of whether a dissolving firm has a property interest in profits earned from hourly ongoing client matters relates to bankruptcy law in the following way. Under 11 U.S.C. § 548, a bankruptcy trustee has the power to avoid any fraudulent transfer of an interest of the debtor in property within a specified period before the bankruptcy. A transfer will be fraudulent if it was done with intent to "hinder, delay, or defraud" creditors, § 548(a)(1)(A), or if it meets certain criteria for a constructive fraudulent transfer, § 548(a)(1)(B).

For purposes of bankruptcy law, debtors have an interest in any property that would have been part of the bankruptcy estate if not for the transfer. *See Begier v. IRS*, 496 U.S. 53, 58 (1990). Certain subsequent transferees of the debtor's property can also be liable under 11 U.S.C. § 550.

If the District of Columbia Court of Appeals holds that a dissolved firm has a property interest in the profits earned from ongoing client matters billed on an hourly basis, we will remand to the district court for an assessment, in the first instance, of whether the defendant firms are liable as subsequent transferees under the fraudulent transfer provisions of the bankruptcy code, 11 U.S.C. §§ 548 and 550.

We believe that the answers to the questions we present are important for D.C. attorneys and their clients. Because these issues are substantive, and affect the outcome of the litigation, they should be resolved in accord with the substantive law of the District of Columbia. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938) (holding that federal courts sitting in diversity shall apply state substantive law); *Guaranty Trust Co. v. York*, 326 U.S. 99 111–12 (1945) (holding that federal courts sitting in diversity should apply state law that determines the outcome of the case). The answers provided will help clarify the duties partners owe to their firms. And in the bankruptcy context, the District of Columbia Court of Appeals' answer to these questions will have important implications for both the suppliers operating in the District of Columbia and the law firms practicing law there. On the one hand, if a firm goes into bankruptcy all of its suppliers become creditors and will be impacted by the scope of a partner's duty to account for profits. Those suppliers might believe that a law firm's receivables from its current client base and its ongoing relationships with those

clients are significant assets of the firm that stand behind its credit. And as the Trustee has argued, the rule endorsed by the defendant firms and the district court "ignores the plight of hundreds of creditors left holding the bag when partners flee with the most valuable assets." On the other hand, if the scope of a partner's duty to account for profits is described too broadly, this will have real-world impacts on the lawyers who practice in Washington D.C. If, when a firm is failing, a lawyer cannot complete any pending client work for the benefit of his or her new firm, that will make it harder for lawyers to find a new home if their firm fails. That in turn may discourage lawyers from entering the D.C. bar and practicing there. And as the district court noted, lateralling between firms is increasingly common in modern legal practice, and the scope of a partner's duty to account for profits from ongoing matters will likely have a substantial impact on this commonplace practice. We believe, however, that these questions are best answered by a court sitting in the applicable jurisdiction that will have greater familiarity with the local concerns of lawyers practicing in the District of Columbia and suppliers to those firms in a supporting marketplace.

## Conclusion

We respectfully request that the District of Columbia Court of Appeals exercise its discretionary authority to accept and decide these questions of law. The Clerk of this Court is hereby ordered to transmit forthwith to the District of Columbia Court of Appeals, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record pursuant to D.C. Code § 11-723.

Further proceedings in our court on the certified questions are stayed pending the District of Columbia Court of Appeals' decision as to whether it will accept review, and if so, our receipt of its answer to the certified questions. The case is withdrawn from submission until further order from this Court. The panel will resume control and jurisdiction on the certified questions upon receiving an answer to one or both of the questions or upon the District of Columbia Court of Appeals' decision to decline to answer the questions. The Clerk is directed to administratively close this docket, pending further order. The parties shall file a joint report notifying this court of the District of Columbia Court of Appeals' decision regarding whether to accept the certified questions. If the District of Columbia Court of Appeals accepts one or more of the certified questions, the parties shall file a joint status report every six months after the date of acceptance, or more frequently if the circumstances warrant.

**IT IS SO ORDERED.**