Jeffrey D. ROBINSON, et al., Plaintiffs,

v.

Michael NUSSBAUM, Defendant.

No. CIV.A. 96–2243(HHG).

United States District Court,
District of Columbia.

July 23, 1997.

John Payton, Michael W. Carroll, Steven P. Finizio, Wilmer, Cutler & Pickering, Washington, DC, for Plaintiffs.

Jacob A. Stein, Stein, Mitchell & Mezines, Washington, DC, Bernard J. Nussbaum, Sonnenschein Nath & Rosenthal, Chicago, IL, for Defendant.

## OPINION

HAROLD H. GREENE, District Judge.

The case arises out of the dissolution of the prominent law firm of Nussbaum & Wald. Plaintiffs Jeffrey D. Robinson, Eric L. Lewis, Michael B. Waitzkin, Martin R. Baach, and James P. Davenport and defendant Michael Nussbaum were general partners at Nussbaum & Wald. Currently before the Court are the parties' respective motions for partial summary judgment.[1] As will be seen below, the legal issues are, surprisingly, relatively novel and therefore of some difficulty.

---

1. Although they address the identical legal issue, technically these are not cross-motions for summary judgment. Defendant Nussbaum has moved for summary judgment on Count One of his Amended Counterclaim and plaintiffs have moved for summary judgment as to Count Eight of their Amended Complaint.

Nussbaum also filed a motion to dismiss certain counts of the complaint and a motion to strike plaintiffs' jury demand. The Court will resolve these motions in a separate decision.

## I

### *Background*

Nussbaum & Wald opened its doors as a law partnership in October of 1989. The firm operated as such until its dissolution on September 9, 1996. Nussbaum & Wald was never governed by a written partnership agreement. According to plaintiffs, as early as the firm's inception there was an understanding among the partners that the firm needed to adopt a comprehensive partnership agreement. Plaintiffs allege that for almost five years the partners at Nussbaum & Wald attempted to draft an agreement that would control, among other things, the liabilities and the distribution of the firm's assets after dissolution. They further claim that during this period Nussbaum repeatedly represented that he would cooperate in the development of such an agreement, but that he stalled, and even thwarted, this effort at every turn.

Defendant Nussbaum tells a very different story. He alleges that he, too, wanted the partners to adopt a written partnership agreement and that he cooperated with outside counsel hired to draft such an agreement. According to him, the efforts came to naught because the agreement failed to include a retirement plan for him, funded out of profits of the firm. He claims that it was this issue, not any bad faith or unwillingness on his part, which stalled the adoption of a written agreement.

More specifically, Nussbaum alleges that on August 31, 1996 James Davenport, another partner, had delivered to him a draft partnership agreement and a memorandum to all the partners. Nussbaum interpreted this memorandum as issuing an ultimatum—either he agree to the terms plaintiffs wanted included in the partnership agreement or Nussbaum & Wald would be dissolved. Given the tensions between partners this issue had produced and in light of the threat of dissolution by Davenport, Nussbaum claims, he dissolved the partnership by serving notice on his partners on September 9, 1996.

At the time of dissolution the firm employed approximately twenty-five lawyers and thirty-five support personnel. A large portion of the firm's revenues came from matters billed on an hourly rate basis. Almost all of the partners and associates from the firm of Nussbaum & Wald went on to establish the new law firm of Baach, Robinson & Lewis. Currently, Baach, Robinson & Lewis handles cases which were pending at Nussbaum & Wald at the time the firm was dissolved.

Plaintiffs filed the instant action on September 30, 1996. Initially, plaintiffs sought only declaratory relief. However, they later amended their complaint to include claims for damages for fraud, misrepresentation, breach of contract, wrongful dissolution, and breach of fiduciary duty. Plaintiffs also seek a declaration that Nussbaum & Wald did not have a partnership agreement with respect to the partners' shares in the profits of the firm for 1995 and 1996 as well as a declaration that Nussbaum is not entitled to share in the profits earned by plaintiffs from their work following the dissolution of Nussbaum & Wald on hourly rate matters pending in the firm at the time of dissolution.

Defendant Nussbaum has filed a three-count counterclaim. First, he seeks a declaratory judgment that he is entitled to share in fees earned after dissolution for pending but uncompleted matters. Next, he seeks a declaration that his partnership share is 36.8%. Third, he demands an accounting of his entitlements in the winding up of the partnership.

Both parties have moved for partial summary judgment on the same issue: defendant Nussbaum's entitlement to share in hourly fees earned by Baach, Robinson & Lewis which stem from client matters which were pending but uncompleted at Nussbaum & Wald at the time of dissolution. For the reasons explained below, the Court will grant summary judgment in favor of defendant on this central issue.

## II

### *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of summary judgment, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). In determining this, a court must draw all justifiable inferences in favor of the non-moving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law may the Court grant summary judgment. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505.

### III

### *Are Hourly Rate Profits Property of the Partnership*

As indicated, Nussbaum & Wald did not have a written partnership agreement. The rights and liabilities of the partners are therefore governed by the District of Columbia Uniform Partnership Act, D.C.Code §§ 41–101 *et seq.* (the "Partnership Act").

Under the Partnership Act, a partnership is terminated by a series of steps. First, the partnership is "dissolved" by one or more partners. Dissolution is "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." D.C.Code § 41–128. At the second stage, the partnership's liabilities are satisfied. Finally, the net assets of the partnership are distributed between and among the partners. D.C.Code §§ 41–128, 41–135, 41–137.

■ A partnership continues after dissolution. D.C.Code § 41–129. Each partner is entitled to "have the partnership *property* applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners." D.C.Code § 41–137(a) (emphasis supplied). Unless the dissolution is contrary to an express partnership agreement, partners are entitled to the benefits which inure "from any *transaction* connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." D.C.Code § 41–120(a) (emphasis supplied). Thus, profits derived from transactions which are not yet completed at the time of dissolution remain the property of the partnership, even if these profits are received after the partnership's dissolution.

■ The question before the Court is whether profits earned by Nussbaum & Wald's former partners on matters pending at the firm at the time of dissolution billed not an contingency basis but on an hourly rate basis, are "property" under the Partnership Act.

Although this is an issue of first impression in the District of Columbia, both parties recognize that this case is largely controlled by the D.C. Court of Appeals' opinion in *Beckman v. Farmer*, 579 A.2d 618 (D.C. 1990). That case involved the dissolution of a three-person law practice and the distribution of a large contingency fee received after the partnership had dissolved. Plaintiff Farmer had been a partner in the law practice of Beckman, Farmer & Kirstein. Some years later, Beckman informed Farmer that he wanted him out of the partnership. The partners reached a complicated arrangement for Farmer's departure, culminating in a "Separation of Practice Agreement."

A dispute soon arose as to distribution of a hefty contingency fee from a pending case which was to be paid to the partnership after Farmer left.[2] The court decided that Farmer was entitled to a full share of the contingency fee, 579 A.2d at 639, holding that

---

**2.** The fee at issue in *Beckman* was for work performed under a contingent fee contract in the antitrust suit involving Sir Freddy Laker, the British airline Laker Airways, Ltd., and a number of major airlines. The contract was signed in 1982, and the partnership performed work on this matter both before and after its dissolution.

following the dissolution[3] of a law partnership, the pending cases are "uncompleted transactions" under the Partnership Act and require winding up after dissolution. 579 A.2d at 636. These pending cases, according to the Court, remain "assets" of the partnership, and the profits from completing these matters must be distributed to each partner according to his share. *Id.*

Plaintiffs claim that *Beckman* does not speak directly to the issue before the Court because it addressed only the distribution of contingency fees, not profits from work on hourly rate matters. This premise is certainly factually correct. But the court neither limited its holding to contingency fee cases nor attempted to distinguish between contingency fee matters and hourly rate representation. It explained that the parties had signed a separate side agreement which resolved the disposition of fees earned from hourly rate matters. For this reason, the Court did not explicitly address distribution of profits from hourly rate matters except to conclude broadly that "*all* work performed on partnership business unfinished at the date of dissolution and unaddressed by the Separation of Practice Agreement, including the Laker contingency fee case . . . was done for the benefit of the dissolved partnership." *Id.* at 639 (emphasis supplied). The clear implication of this language is that *but for* the separate agreement the firm's profits from hourly rate matters would have been considered partnership property the same as the contingency fee matter.[4]

Plaintiffs read *Beckman* quite differently. They argue that the court implicitly limited its holding to contingency fee matters by emphasizing that contingency fee agreements are " 'undergirded' with binding contracts" which the remaining partners in a dissolved law firm have a continuing duty to complete for the sake of the partnership. 579 A.2d at 641. Extending this reasoning, plaintiffs argue, *Beckman*'s holding cannot apply to work on hourly rate matters because these are at-will engagements which are not grounded in "binding contracts."

Plaintiffs' reading of *Beckman* is too narrow. As an initial matter, their reference is to a part of the *Beckman* opinion which resolves an entirely different issue—whether a cash method of accounting affects the character of contingency fees as partnership property.[5] There is no basis for reading into this section an implicit intention to limit its more general holding to contingency fee matters. On the contrary, in this very section the court made a point to reiterate the overall principle underlying its decision regarding Farmer's post-dissolution rights: "fees for pre-dissolution work in progress paid after dissolution are treated as assets of the firm subject to distribution on liquidation." 579 A.2d at 641 (citation omitted).

Next plaintiffs take a cue from *Beckman*'s "undergirded with binding contracts" lan-

---

**3.** The Court of Appeals in *Beckman* made clear that this rule applies only when a partner insists on his right to compel liquidation of the partnership by seeking a winding up of partnership business and a final accounting. "If a partner insists on liquidation, then the line of demarcation for determining 'the amount owing to the respective partners,' D.C.Code § 41–137(a), is not dissolution but completion of winding up the partnership's business." 579 A.2d at 635. This rule does not apply, then, if a partner consents to the continuation of the partnership.

**4.** The District of Columbia Court of Appeals recently reaffirmed this principle, again without limitation as to contingency fee or hourly rate matters. In *Young v. Delaney,* 647 A.2d 784, 792 (D.C.1994), the court, citing *Beckman,* declared that "[b]etween dissolution and completion of the wind-up, the partners have a fiduciary obligation to hold such assets [i.e., pending cases] for the benefit of the other partners."

This issue has also been squarely decided by the California courts. In *Rothman v. Dolin,* 20 Cal.App.4th 755, 24 Cal.Rptr.2d 571, 573 (1993), the Court of Appeal held that pending cases are unfinished business of a law partnership regardless of whether matters were billed at an hourly rate or by contingency fee. Noting that "each partner has a continuing fiduciary responsibility to the other partners to complete the unfinished business of the partnership," the court found that "unfinished business simply consists of all matters in progress which have not been completed at the time the firm is dissolved." *Id.* at 573.

**5.** The court found that a contingency fee was an asset of the dissolved law firm even if the fee had not been received at the time of dissolution and concluded that the former partners had an interest in the fee regardless of whether the firm operated on a cash or accrual accounting system.

guage in order to suggest that a different rule should govern a former partner's post-dissolution rights with respect to hourly rate representation because said representations, unlike contingency fee arrangements, are at-will engagements which can be terminated by either party at any time. Inasmuch as a partnership has a vested and enforceable contractual interest in a contingency fee agreement, plaintiffs conclude, these, and only these, agreements can be considered "property" of the dissolved partnership.

After careful consideration the Court remains unconvinced by these arguments. The Partnership Act, as interpreted in *Beckman*, requires that former partners share *all* profits earned from completing client matters that were pending at the time of dissolution. As explained below, how the firm's clients were billed, either at an hourly rate or on a contingency fee basis, does not change the status of their work as partnership property.

In characterizing contingency fee agreements and only such agreements as "property" of a firm, plaintiffs overstate the nature of the rights which arise under a contingency fee agreement. Plaintiffs assert that "it would be a breach of the agreement for either side to terminate the relationship prior to the final resolution of the matter." [6] However in a majority of jurisdictions, including the District of Columbia, this is not the rule.[7] The modern rule is that the special nature of the attorney-client relationship prevents an attorney from asserting an enforceable interest in future fees until the occurrence of the contingency. Since trust and confidence are essential aspects of an attorney-client relationship, a client may discharge his attorney for any reason and at any time. *See, e.g., Fox & Associates Co. v. Purdon*, 44 Ohio St.3d 69, 541 N.E.2d 448, 450 (Ohio 1989). These courts hold that a client should not be compelled to continue to employ an attorney he no longer trusts, whether he retains the attorney by an hourly rate or signs a contingency fee agreement. *See, e.g., Fracasse v. Brent*, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9, 13 (Cal.1972) (en banc).

Generally, an attorney discharged before settlement or judgment may not recover from his former client the full amount stated in the contingency fee contract. "The unique relationship between attorney and client prevents the agreement between them from being considered as an ordinary contract because doing so would ignore the special fiduciary relationship." *Olsen and Brown v. City of Englewood*, 889 P.2d 673, 676 (Colo.1995) (en banc) (citations omitted). Instead, the discharged attorney's recovery is limited to quantum meruit, or the reasonable value of the services already performed. *See Kopelman and Associates, L.C. v. Collins*, 196 W.Va. 489, 473 S.E.2d 910, 917 n. 7 (W.Va.1996).

As this discussion shows, in the context of the issue before the Court, there is no relevant distinction between hourly rate and contingent fee representation.[8] There is simply no basis for carving out a separate rule for profits earned from work on hourly rate matters pending at the time of dissolution.

**6.** Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment, at 19.

**7.** *See* Lester Brickman, *Setting the Fee When The Client Discharges a Contingency Fee Attorney*, 41 Emory L.J. 367, 368 n. 4 (1992) (citing cases); Michael L. Closen and Zachary A. Tobin, *The Contingent Contingency Fee Arrangement; Compensation of the Contingency Fee Attorney Discharged by the Client*, 76 Ill. B.J. 916, 917 n. 3 (1987) (citing cases); *see also Greenberg v. Sher*, 567 A.2d 882, 885–886 (D.C.1989) (recovery of the full contingency fee is permissible in cases in which attorney has substantially performed) (citing *In re Waller*, 524 A.2d 748, 750 (D.C.1987)).

**8.** The Court recognizes that in other respects there are significant differences between hourly fee arrangements and contingency fee representation. A contingency arrangement is a riskier proposition for an attorney. For one, as plaintiffs point out, the attorney gambles that the matter will be resolved successfully and that his percentage of his client's recovery will garner him a profit. This is a calculated risk which often pays off. The fee the attorney or law firm earns usually is much higher than if the client had been billed at an hourly rate: "lawyers charge a premium when their entire fee is contingent on winning .... The premium added for contingency compensates for the risk of nonpayment if the suit does not succeed ...." *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 735–36, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (Blackmun, J., dissenting).

The crux of the *Beckman* opinion fully supports this conclusion. There the Court of Appeals explained that its holding stemmed from two fundamental principles of partnership law. 579 A.2d at 636. First, dissolution of a law partnership does not terminate existing contracts with its clients. And second, former partners who honor these existing contracts do so as fiduciaries for the benefit of the former partnership. *Id.* From these principles, the court concluded that work performed after dissolution to resolve pending cases is conducted for the benefit of the dissolved law partnership. The nature of the underlying contractual relationship between the dissolved partnership and its client does not alter the legal status of a dissolved partnership nor does it change the fiduciary duties each partner must honor towards another. They remain the same regardless of how an attorney agrees to be compensated by his clients. As a result, *all* matters pending at a dissolved law partnership at the time of dissolution are "uncompleted transactions" under the Partnership Act and are subject to winding up and distribution according to the former partner's respective interests.

## IV

### *Fairness*

Initially, this rule may appear unfair. Plaintiffs argue that they should not be forced to share their profits with a former partner who is no longer contributing his time or expertise to the case. This Court has seriously considered this objection—particularly since the Court is not constrained by direct precedent—and it has determined that, for several reasons, the objection does not cause a reversal of the conclusions discussed *supra.*

First and foremost, partners are free (indeed encouraged) to execute written partnership agreements which provide for an exact disposition of profits from hourly rate matters after dissolution. As *Beckman* illustrates, in practice law partners do just that. In fact, the draft partnership agreements circulated at Nussbaum & Wald contained such a provision.

Second, the rule which the Court establishes applies only to profits earned from work which finishes matters pending at the former law firm at the time of its dissolution. Profits earned by former partners on *new* matters brought into the firm after the date of dissolution, including new matters for clients of the dissolved law firm, are not the "property" of the dissolved partnership. Former partners are not forced to account for the fruits of business they acquired independently.

Third, each and every partner finishing uncompleted client matters must account to the dissolved partnership. In this case, for example, Michael Nussbaum has a fiduciary duty to his former partners as well. He, too, must share any profits he receives from work completing client matters pending at Nussbaum & Wald at the time of dissolution.

Nor will this rule work an injustice in this case. Before it was dissolved, Nussbaum & Wald was a growing, successful, and prestigious Washington, D.C. law firm. As a name partner, Michael Nussbaum was a major factor in its success; in the hackneyed phrase, he appears to have been the principal "rainmaker." In any event, it is uncontroverted that he brought in a substantial amount of business. He was primarily responsible for the firm's representation of Lloyd's of London, a lucrative association which eventually comprised almost half of the firm's revenues. Nussbaum also was responsible for the firm's representation of the Court Appointed Fiduciaries of the Bank of Credit and Commerce (BCCI), another important client for Nussbaum & Wald.

Most, if not all, of the work performed on behalf of these two important clients was billed on an hourly basis. The Court has no doubt that all the partners at Nussbaum & Wald were, and remain, extremely skilled attorneys with excellent reputations. It is equally clear, however, that Michael Nussbaum was a significant force within the firm. It would be unfair to exclude him from a share in the profits from the very matters he brought to the Nussbaum & Wald partnership.

## V

### *Equitable Defenses*

 Plaintiffs finally contend that in any event Nussbaum is not entitled to summary judgment on this issue because material facts are in dispute on the question whether Nussbaum's claims are barred by the equitable doctrines of unclean hands and estoppel. Plaintiffs have raised these defenses, arguing that Nussbaum should be barred from asserting a claim based on the absence of a partnership agreement because he himself was chiefly responsible for its absence.

The Court disagrees. The defendant's underlying claim is an equitable action for an accounting, contained in Court Three of his amended counterclaim. But before the Court at this time is the defendant's motion for summary judgment on Count One. In Count One, he requests a declaration that he is entitled to share in fees earned after dissolution related to client matters pending and uncompleted at the time of dissolution. This is a legal question concerning whether under the default rules of the Partnership Act Nussbaum is entitled to share in the profits earned by his former partners on hourly rate matters formerly pending at Nussbaum & Wald. There are no disputed facts with respect to this question. The parties do not contest that Nussbaum was a partner, that no written comprehensive partnership agreement was signed, or that Baach, Robinson & Lewis conduct work on matters pending at the time of the dissolution of Nussbaum & Wald.

Plaintiffs' equitable defenses do not concern Nussbaum's right under the Partnership Act to share in these profits. Instead, plaintiffs allege that Nussbaum's own misconduct prevents him from asserting this right. Plaintiffs will have the opportunity at trial to demonstrate that Nussbaum prevented the formation and execution of a written comprehensive partnership agreement and that he dissolved the firm of Nussbaum & Wald in bad faith. This issue, however, is not material to the question before the Court on summary judgment.

## VI

### *Conclusion*

For these reasons, the Court finds that under the Partnership Act and the case law hourly rate matters as well as contingent fee matters are to be treated as pending but unfinished business of a dissolved law firm. As a result, Michael Nussbaum, as a former partner, has a legal right to share in the net profits his former partners earn from completing work on hourly rate matters pending at the time of Nussbaum & Wald's dissolution. Defendant's motion for partial summary judgment on Count One of his Amended Counterclaim will be granted.

An Order consistent with the above is being issued contemporaneously herewith.

### *ORDER*

In accordance with the Opinion issued contemporaneously herewith, it is this 23th day of July, 1997

ORDERED that plaintiffs' motion for partial summary judgment be and it is hereby DENIED; and it is further

ORDERED that defendant's motion for partial summary judgment be and it is hereby GRANTED; and it is further

ORDERED that summary judgment be and it is hereby entered in favor of defendant on Count One of his Amended Counterclaim; and it is further

DECLARED that Michael Nussbaum is entitled to share in the net profits earned after the dissolution of Nussbaum & Wald that relate to matters, whether billed on an hourly rate basis or by contingency fee, pending but uncompleted at the time of dissolution.