**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 7 Trustee of the Estate of Howrey LLP,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>HOGAN LOVELLS US LLP,<br>*Defendant-Appellee.* | No. 15-16326<br><br>D.C. No.<br>3:14-cv-04882-JD |

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 7 Trustee of the Estate of Howrey LLP,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>PILLSBURY WINTHROP SHAW PITTMAN LLP,<br>*Defendant-Appellee.* | No. 15-16327<br><br>D.C. No.<br>3:14-cv-04883-JD |

ALLAN B. DIAMOND, Chapter 7
Trustee of the Estate of Howrey
LLP,
                 *Plaintiff-Appellant*,

                 v.

SEYFARTH SHAW LLP,
                 *Defendant-Appellee.*

No. 15-16328

D.C. No.
3:14-cv-04884-
JD

ALLAN B. DIAMOND, Chapter 7
Trustee of the Estate of Howrey
LLP,
                 *Plaintiff-Appellant*,

                 v.

PERKINS COIE LLP,
                 *Defendant-Appellee.*

No. 15-16329

D.C. No.
3:14-cv-04885-
JD

ALLAN B. DIAMOND, Chapter 7
Trustee of the Estate of Howrey
LLP,
                 *Plaintiff-Appellant*,

                 v.

NEAL, GERBER & EISENBERG LLP,
                 *Defendant-Appellee.*

No. 15-16330

D.C. No.
3:14-cv-04886-
JD

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 7 Trustee of the Estate of Howrey LLP, *Plaintiff-Appellant*, v. KASOWITZ BENSON TORRES LLP, *Defendant-Appellee.* | No. 15-16331 D.C. No. 3:14-cv-04887-JD |

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 7 Trustee of the Estate of Howrey LLP, *Plaintiff-Appellant*, v. SHEPPARD MULLIN RICHTER & HAMPTON LLP, *Defendant-Appellee.* | No. 15-16332 D.C. No. 3:14-cv-04888-JD |

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 7 Trustee of the Estate of Howrey LLP, *Plaintiff-Appellant*, v. JONES DAY, *Defendant-Appellee.* | No. 15-16333 D.C. No. 3:14-cv-04889-JD ORDER |

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted November 16, 2017
Submission Withdrawn February 27, 2018
Resubmitted February 20, 2020
San Francisco, California

Filed February 27, 2020

Before: Ronald M. Gould and Mary H. Murguia, Circuit
Judges, and Nancy D. Freudenthal,* District Judge.

Order

---

* The Honorable Nancy D. Freudenthal, United States District Judge
for the District of Wyoming, sitting by designation.

## SUMMARY[**]

# Bankruptcy

Following the District of Columbia Court of Appeals' answers to questions previously certified by the panel, the panel filed an order vacating the district court's decision and remanding for further proceedings in a bankruptcy case.

In the panel's prior order certifying questions to the District of Columbia Court of Appeals, the panel had stated that the claims of a trustee for the bankruptcy estate turned on the answers to unresolved questions of District of Columbia partnership law concerning the scope of the interest, if any, that a partnership has in client matters started at the partnership but completed at another firm. The District of Columbia Court of Appeals answered the certified questions, holding, among other things, that a dissociated partner has no duty to account for profits after the partner leaves the firm. The panel expressly adopted the District of Columbia Court of Appeals' answers, vacated the district court's decision, and remanded for further proceedings consistent with those answers.

## COUNSEL

Christopher D. Sullivan (argued), Diamond McCarthy LLP, San Francisco, California; Christopher R. Murray and Michael Fishel, Diamond McCarthy LLP, Houston, Texas; for Plaintiff-Appellant.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Shay Dvoretsky (argued) and Emily J. Kennedy, Jones Day, Washington, D.C.; Robert A. Mittelstaedt and Jason McDonell, Jones Day, San Francisco, California; for Defendant-Appellee Jones Day.

Jonathan W. Hughes and Pamela Phillips, Arnold & Porter LLP, San Francisco, California; Robert Reeves Anderson, Arnold & Porter LLP, Denver, Colorado; for Defendant-Appellee Hogan Lovells US LLP.

David G. Keyko, Pillsbury Winthrop Shaw Pittman LLP, New York, New York; John M. Grenfell and G. Allen Brandt, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California; for Defendant-Appellee Pillsbury Winthrop Shaw Pittman LLP.

Lori L. Roeser, Seyfarth Shaw LLP, Chicago, Illinois, for Defendant-Appellee Seyfarth Shaw LLP.

Ronald A. McIntire and Judith B. Gitterman, Perkins Coie LLP, Los Angeles, California, for Defendant-Appellee Perkins Coie LLP.

Nancy J. Newman, Hanson Bridgett LLP, San Francisco, California; Robert Radasevich, Neal Gerber & Eisenberg LLP, Chicago, Illinois; for Defendant-Appellee Neal Gerber & Eisenberg LLP.

Robert M. Novick, Kasowitz Benson Torres & Friedman LLP, New York, New York; Margaret A. Ziemianek, Kasowitz Benson Torres & Friedman LLP, San Francisco, California; for Defendant-Appellee Kasowitz Benson Torres LLP.

Richard W. Brunette and Michael M. Lauter, Sheppard Mullin Richter & Hampton LLP, Los Angeles, California, for Defendant-Appellee Sheppard Mullin Richter & Hampton LLP.

Paulette Brown, President; Eric A. Shumsky, Christopher J. Cariello, and Anjali S. Dalal, Of Counsel; American Bar Association, Chicago, Illinois; for Amicus Curiae American Bar Association.

David C. Tingstad, Beresford Booth PLLC, Edmonds, Washington, for Amici Curiae Various Practitioners and Academics.

## ORDER

In our prior Order Certifying Questions to the District of Columbia Court, we certified the following questions to the District of Columbia Court of Appeals, by this language:

> Pursuant to D.C. Code § 11-723 we respectfully ask the District of Columbia Court of Appeals to resolve three questions of District of Columbia law that "may be determinative" of this bankruptcy appeal. D.C. Code § 11-723(a):
>
> (1)     Under District of Columbia law does a dissociated partner owe a duty to his or her former law firm to account for profits earned post-departure on legal matters that were in progress but not completed at the time of the partner's departure, where the partner's former

> law firm had been hired to handle those matters on an hourly basis and where those matters were completed at another firm that hired the partner?
>
> (2)     If the answer to question (1) is "yes," then does District of Columbia law allow a partner's former law firm to recover those profits from the partner's new law firm under an unjust enrichment theory?
>
> (3)     Under District of Columbia law what interest, if any, does a dissolved law firm have in profits earned on legal matters that were in progress but not completed at the time the law firm was dissolved, where the dissolved law firm had been retained to handle the matters on an hourly basis, and where those matters were completed at different pre-existing firms that hired partners of the dissolved firm post-dissolution?

The District of Columbia Court of Appeals accepted our certified questions and held oral argument on them. The District of Columbia Court of Appeals has now answered our certified questions. The court's short answers were:

> (1)     We hold that hourly-billed client matters are not "property" of the law firm. A client has an almost "unfettered right" to choose or to discharge counsel. *In re Mance*, 980 A.2d 1196, 1203 (D.C. 2009).

Therefore, a law firm has no more than a "unilateral expectation," rather than a "legitimate claim of entitlement," to future fees earned from continued work on hourly-billed client matters. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

(2) After a partner leaves the law firm (disassociates), the partner owes no continued duty to the former law firm to account for new profits earned on hourly-billed client matters that started at the former firm. A dissociated partner has a limited duty of loyalty to the former firm only "with regard to matters arising and events occurring before the partner's dissociation." D.C. Code § 29-606.03(b)(3) (2013 Repl.). This limited duty requires a dissociated partner to remit profits earned on work performed prior to the partner's dissociation, but does not include profits earned from work performed subsequent to the partner's dissociation.

(3) Since a dissociated partner has no duty to account for profits earned after the partner leaves the firm, we need not address this question.

(4) A dissolved law firm has no interest in profits earned on hourly-billed

client matters following dissolution. A dissolved law firm is only entitled to proceeds earned as part of the firm's "winding up" process, which include acts that preserve partnership rights and property, prosecute and defend actions, settle or transfer partnership business, or distribute assets. "Winding up" does not encompass new business or work done on former client matters after dissolution by former partners. The dissolved partnership can no longer undertake work on these matters after dissolution. *See* D.C. Code § 29-608.03(c) (2013 Repl.).

When we certified the specified questions to the District of Columbia Court of Appeals, we expressly said that "[i]f the District of Columbia Court of Appeals resolves these questions we will resolve the issue in our case in accordance with its answers." The answers to our certified questions appear in the decision dated February 13, 2020 from the District of Columbia Court of Appeals, which is attached to this Order as Appendix A. We therefore **VACATE** the district court's prior decision and **REMAND** to the district court for further proceedings consistent with the answers given by the District of Columbia Court of Appeals, which this Court expressly adopts.

**IT IS SO ORDERED.**

# APPENDIX A

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-SP-218

ALLAN B. DIAMOND,
CHAPTER 7 TRUSTEE OF HOWREY LLP,
APPELLANT,

v.

HOGAN LOVELLS US LLP, ET AL.,
APPELLEES.

FILED 2/13/2020
District of Columbia
Court of Appeals

*Julio A. Castillo*

Julio Castillo
Clerk of Court

On Questions Certified by the
United States Court of Appeals for the Ninth Circuit
(15-16326, 15-16327, 15-16328, 15-16329,
15-16330, 15-16331, 15-16332, and 15-16333)

(Argued December 17, 2018                    Decided February 13, 2020)

*Christopher R. Murray*, with whom *Christopher D. Sullivan* was on the brief, for appellant.

*Jonathan W. Hughes*, with whom *Allon Kedem* was on the statement in lieu of brief, for appellee Hogan Lovells US, LLP.

*Shay Dvoretzky*, with whom *Parker A. Rider-Longmaid* was on the brief, for appellee Jones Day.

*Margaret A. Ziemianek*, *Robert M. Novick*, and *Henry Brownstein* were on the brief for appellee Kasowitz Benson Torres LLP.

*Robert Radasevich* and *Nancy J. Newman* were on the brief for appellee Neal, Gerber & Eisenberg LLP.

*Jon B. Jacobs* was on the statement in lieu of brief for appellee Perkins Coie LLP.

*Jack McKay* was on the statement in lieu of brief for appellee Pillsbury Winthrop Shaw Pittman LLP.

*Steven P. Hollman* was on the statement in lieu of brief for appellee Sheppard, Mullin, Richter & Hampton LLP.

*Lori L. Roeser* and *M. Ryan Pinkston* were on the brief for appellee Seyfarth Shaw LLP.

*Todd S. Kim*, *Hilarie Bass*, and *Eric A. Shumsky* were on the brief for amicus curiae American Bar Association in support of appellees.

*Anthony E. Davis*, *Logan G. Haine-Roberts*, and *Gretchen Harris Sperry* were on the brief for amicus curiae The Association of Professional Responsibility Lawyers in support of appellees.

*Robert J. Malionek* and *Gregory G. Garre* were on the brief for amicus curiae The Bar Association of the District of Columbia in support of appellees.

*Douglas L. Hendricks* and *Brian R. Matsui* were on the brief for amicus curiae "25 National and International Law Firms"[*] in support of appellees.

Before BLACKBURNE-RIGSBY, *Chief Judge*, BECKWITH, *Associate Judge*, and RUIZ, *Senior Judge*.

---

[*] Morrison & Foerster LLP; Faegre Baker Daniels LLP; Miles & Stockbridge PC; Hunton Andrews Kurth LLP; Greenberg Traurig LLP; Bryan Cave Leighton Paisner LLP; Morgan Lewis & Bockius LLP; Buckley Sanders LLP; Goulston & Storrs PC; Dykema Gossett PLLC; Alston & Bird LLP; Snell & Wilmer LLP; Fenwick & West LLP; Drinker Biddle & Reath LLP; Lowenstein Sandler LLP; Holland & Knight LLP; Dorsey & White LLP; Vinson & Elkins LLP; Dechert LLP; Nixon Peabody LLP; Ogletree, Deakins, Nash, Smoak & Stewart, PC; K&L Gates LLP; Wilmer Cutler Pickering Hale and Dorr LLP; Squire Patton Boggs (US) LLP; Fish & Richardson PC.

3

BLACKBURNE-RIGSBY, *Chief Judge*:  This case is before the court on a certified question from the United States Court of Appeals for the Ninth Circuit.[1] The Ninth Circuit asks this court to clarify certain aspects of the District of Columbia's partnership laws that would assist the Ninth Circuit in resolving the pending bankruptcy proceedings of the dissolved Howrey LLP ("Howrey") law firm. As we construe the inquiry,[2] the Ninth Circuit asks us to answer the following questions:

> (1) Do law partnerships have a property interest in hourly-billed client matters?
>
> (2) Under District of Columbia law, does a partner who leaves the law firm (disassociates) owe a duty to the former law firm to account for profits earned post-departure on legal matters that were in progress but not completed at the time of the partner's departure, where those matters were billed on an hourly basis and where those matters were then completed by the former partner at another firm?
>
> (3) If the answer to question (2) is "yes," then does District of Columbia law allow a partner's former law firm to recover those profits from the partner's new law firm under an unjust enrichment theory?
>
> (4) Under District of Columbia law, what property interest, if any, does a dissolved law firm have in profits earned on legal matters that were in progress but not completed at the time the

---

[1]  *See Diamond v. Hogan Lovells US LLP*, 883 F.3d 1140, 1143 (9th Cir. 2018); *see also See* D.C. Code § 11-723 (2012 Repl.).

[2]  *See Penn Mut. Life Ins. Co. v. Abramson*, 530 A.2d 1202, 1207 (D.C. 1987) ("With regard to the questions of law designated by the certifying court, we may exercise our prerogative to frame the basic issues as we see fit for an informed decision.")

4

law firm dissolved, where the matters were billed on an hourly basis, and where those matters were then completed by a former partner at another firm post dissolution?

## I.    Short Answers

We answer the above questions as follows:

(1) We hold that hourly-billed client matters are not "property" of the law firm. A client has an almost "unfettered right" to choose or to discharge counsel. *In re Mance*, 980 A.2d 1196, 1203 (D.C. 2009). Therefore, a law firm has no more than a "unilateral expectation," rather than a "legitimate claim of entitlement," to future fees earned from continued work on hourly-billed client matters. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

(2) After a partner leaves the law firm (disassociates), the partner owes no continued duty to the former law firm to account for new profits earned on hourly-billed client matters that started at the former firm. A dissociated partner has a limited duty of loyalty to the former firm only "with regard to matters arising and events occurring before the partner's dissociation." D.C. Code § 29-606.03(b)(3) (2013 Repl.). This limited duty requires a dissociated partner to remit profits earned on work performed prior to the partner's dissociation, but does not include profits earned from work performed subsequent to the partner's dissociation.

(3) Since a dissociated partner has no duty to account for profits earned after the partner leaves the firm, we need not address this question.

(4) A dissolved law firm has no interest in profits earned on hourly-billed client matters following dissolution. A dissolved law firm is only entitled to proceeds earned as part of the firm's "winding up" process, which include acts that preserve

partnership rights and property, prosecute and defend actions, settle or transfer partnership business, or distribute assets. "Winding up" does not encompass new business or work done on former client matters after dissolution by former partners. The dissolved partnership can no longer undertake work on these matters after dissolution. *See* D.C. Code § 29-608.03(c) (2013 Repl.).

## II.     Factual Background

In the aftermath of the "Great Recession" of 2008, Howrey, a law firm operating under District of Columbia partnership law, became insolvent. Howrey faced a decline in demand for its legal services and an inability to collect accounts receivable from clients. This led Howrey to engage in unsustainable borrowing to cover its operating expenses. By early 2011, Howrey had defaulted on its loan, and the bank prohibited Howrey from using cash collateral without the bank's consent. Some partners left Howrey during this turbulent time. On March 9, 2011, the remaining Howrey partners voted to dissolve the firm, effective March 15, 2011.

As part of the dissolution vote, the partners also amended Howrey's partnership agreement. The amendment stated that:

> [N]either the Partners nor the Partnership shall have any claim or entitlement to clients, cases or matters ongoing at the time of dissolution other than the entitlement for collections of amounts due for work performed by the Partners and other Partnership personnel on behalf of the Partnership prior to the earlier of their

6

respective departure dates from the Partnership or the date of dissolution of the Partnership.[3]

In 2013, appellant Allan B. Diamond, Trustee for Howrey's bankruptcy estate (the "Trustee"), filed claims in the United States Bankruptcy Court for the Northern District of California against appellees, a group of eight law firms[4] that hired former Howrey partners. The Howrey partners who were hired by these firms brought with them hourly-billed client matters that were pending before and after Howrey's dissolution, and they continued working on them at their new firms. The Trustee claimed that Howrey's bankruptcy estate was entitled to the profits that these firms earned from working on hourly-billed client matters that were initiated at Howrey. Specifically, the Trustee claimed that Howrey's estate was entitled to recover profits earned under an unjust enrichment theory if the partner left prior to Howrey's dissolution. The Trustee also claimed the estate is entitled to recover profits because the *Jewel* Waiver adopted upon dissolution constituted a "fraudulent transfer" of

---

[3] This is commonly referred to as a "*Jewel* waiver." *See Jewel v. Boxer*, 203 Cal. Rptr. 13 (Cal. Ct. App. 1984).

[4] Appellees Hogan Lovells US, LLP; Jones Day; Kasowitz Benson Torres LLP; Neal, Gerber & Eisenberg LLP; Perkins Coie LLP; Pillsbury Winthrop Shaw Pittman LLP; Sheppard, Mullin, Richter & Hampton LLP; and Seyfarth Shaw LLP.

Howrey's assets by the former partners.[5] Appellees filed motions to dismiss.

The bankruptcy court allowed the Trustee to move forward on both the pre- and post-dissolution claims.[6] However, the United States District Court for the Northern District of California, upon review of the bankruptcy court's decision, reversed the bankruptcy court's denial of appellees' motions to dismiss. The district court rested its conclusion on the "universally-accepted truth that a firm does not own new client matters taken on by other firms" and its prediction that this court would construe the hourly-billed client matters as "new."[7] The Ninth Circuit, concluding that appellees' liability in the bankruptcy proceedings turned on unanswered questions of District of Columbia law, decided that these issues "should be resolved in accord with the substantive law of the District of Columbia." *Diamond*, 883 F.3d at 1147. Accordingly, the Ninth Circuit certified the above-mentioned questions to this court, and stayed the Trustee's claims against appellees

---

[5] Under the Bankruptcy Code, a "trustee may avoid any transfer" if the debtor "voluntarily or involuntarily . . . made such transfer . . . with actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A) (2012); *see also* 11 U.S.C. § 550 (2012) (identifying a transferee's liability to a trustee for, among other things, fraudulent transfers).

[6] *In re Howrey*, 71 Collier Bankr. Case. 2d 57, *4 (Bankr. N.D. Cal. 2014); *In re Howrey*, 515 B.R. 624, 628, 630-31 (Bankr. N.D. Cal. 2014).

[7] *Hogan Lovells US LLP v. Howrey LLP*, 531 B.R. 814, 822-23 (N.D. Cal. 2015).

8

pending our decision. *Id.* at 1143, 1148.

### III.    Legal Framework

#### A. *District of Columbia Partnership Law and the Duty of Loyalty*

Partnership law in the District of Columbia is governed by statute. The District's current partnership law, titled the Uniform Partnership Act of 2010 ("D.C. RUPA"), is fashioned after the model Revised Uniform Partnership Act ("RUPA"), which was drafted by the National Conference of Commissioners on Uniform State Laws.   D.C. Code §§ 29-601.01 to -611.01 (2013 Repl.).[8]   The District's statutory

_____

[8] Congress enacted the first District of Columbia Uniform Partnership Act in 1962. *See* Pub. L. No. 87-709, 76 Stat. 636, 644 (1962). Before then, courts of the District of Columbia relied on the common law. *See Martinez v. McGregor-Doniger, Inc.*, 173 A.2d 221, 221-22 & n.2 (D.C. 1961) (citing Corpus Juris Secundum for the general rule that a retiring partner is liable for partnership debts contracted while a member of the partnership); *Barlow v. Cornwell*, 125 A.2d 63, 67 & n.6 (D.C. 1956) (citing Corpus Juris Secundum in observing that all partners are bound by the actions of one partner if taken within the scope of the partnership and with the knowledge of others). Like most other jurisdictions, the District's codified partnership law was based on the model Uniform Partnership Act ("UPA") adopted by the National Conference of Commissioners on Uniform State Laws in 1914. *See* D.C. Council, Comm. on Consumer & Regulatory Affairs, Report on Bill 11-344, the "District of Columbia Uniform Partnership Act of 1996," at 2 (Sept. 24, 1996). In 1996, the Council of the District of Columbia replaced the 1962 act with the Uniform Partnership Act of 1996, modeled after the RUPA that was drafted by the National Conference of Commissioners on Uniform State Laws in 1994.   *See* D.C.

9

scheme provides partnerships a starting point; with limited exceptions, partners may alter some of these statutory provisions through their partnership agreement. *See* D.C. Code § 29-601.04.

One of the basic tenets of partnership law is that "[p]artners are accountable to one another as fiduciaries." *Marmac Inv. Co. v. Wolpe*, 759 A.2d 620, 626 (D.C. 2000). Partners owe both a duty of care and a duty of loyalty to the partnership and to the other partners. D.C. Code § 29-604.07(a). At issue in this appeal is a partner's duty of loyalty.[9] The D.C. RUPA requires a partner to "account to the partnership and hold as trustee for [the partnership] any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity"; to refrain from taking actions that are adverse to the

---

Council Report on Bill 11-344, at 2; *see generally* (Revised) Uniform Partnership Act §§ 101-810 (1994). As the first major revision to the UPA in eighty years, the RUPA constituted a "substantial and necessary modernization of the existing statute which recognizes and facilitates modern business organization practices," including the recognition and provisions dealing with limited liability partnerships. D.C. Council Report on Bill 11-344, at 2. The current partnership act, the Uniform Partnership Act of 2010, *see* D.C. Code §§ 29-601.01, to -611.01 (2013 Repl.), is an amended RUPA.

[9] A partner's duty of care, which precludes a partner from engaging in "grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law," is not relevant for purposes of this appeal. D.C. Code § 29- 604.07(c).

10

partnership; or to compete with the partnership "before the dissolution of the partnership." *Id.* § 29-604.07(b)(1)-(3). Generally speaking, the duty of loyalty ceases when a partner leaves the partnership, which is known as "dissociation" from the partnership. Following dissociation, a former partner can compete with his or her former partnership immediately. *Id.* § 29-505.03(b)(2). However, a former partner has a continuing, limited duty of loyalty "with regard to matters arising and events occurring before the partner's dissociation, unless the partner participates in winding up the partnership's business." *Id.* § 29-606.03(b)(3).[10]

When a partnership is dissolved, a partner owes a duty to account for "property, profit[s], or benefit[s]" gained in the conduct and "winding up" of the partnership business or from use of partnership property. D.C. Code § 29-604.07(b)(1). "Winding up" of the partnership's business includes acts to preserve partnership rights and property for a reasonable time, and acts to prosecute and defend actions, settle activities, transfer partnership property, or distribute assets. D.C. Code § 29-608.03(c).[11] A partner who participates in the winding up

---

[10] Additionally, "[a] person's dissociation alone does not discharge the person from a debt, obligation, or other liability to the partnership or to the other partners which the person incurred while a partner." D.C. Code § 29-606.03(c).

[11] The statute states in relevant part:

of the partnership business is entitled to "reasonable compensation for services rendered" beyond that of his or her partnership interest. D.C. Code § 29-604.01(k).

### B. District of Columbia's Common Law Definition of "Property"

Whether a law firm's hourly-billed client matters constitute property of the partnership cognizable under the D.C. RUPA is a question of statutory interpretation and an issue of first impression, which we review de novo. *See Plummer v. United States*, 43 A.3d 260, 273 (D.C. 2012). The District's partnership act does not define partnership "property." Rather, the act merely states that "[p]roperty acquired by a partnership shall be property of the partnership and not of the partners individually." D.C. Code § 29-602.03. The act further explains how partnership property is acquired, D.C. Code § 29-602.04, and how property is to be divided upon dissolution, D.C. Code § 29-608.07. We therefore will look to our common law to

---

> A person winding up a partnership's activities and affairs may preserve the partnership activities or property as a going concern for a reasonable time, prosecute and defend actions and proceedings, whether civil, criminal, or administrative, settle and close the partnership's business, dispose of and transfer the partnership's property, discharge the partnership's liabilities, distribute the assets of the partnership . . . , settle disputes by mediation or arbitration, and perform other necessary acts.

*Id.* § 29-608.03(c).

12

define what constitutes "property" for purposes of District of Columbia partnership law as applied to law firms.[12]

Property can either be "tangible," such as things that have a "physical form and characteristics," Tangible Property, *Black's Law Dictionary* (10th ed. 2014), or "intangible," meaning things that "lack[] a physical existence," such as "stock options" or "business goodwill." Intangible Property, *Black's Law Dictionary*. To have an enforceable property interest in a thing, a party "clearly must have more than an abstract need or desire for it" and more than a "unilateral expectation of it." *Roth*, 408 U.S. at 577. The party "must, instead, have a legitimate claim of entitlement to it." *Id.*

For example, we have said that, in the context of employment, an employee has no legitimate claim of entitlement, and therefore no property interest, in benefits that "rest[] on the discretion of the employer." *Burton v. Office of Emp. Appeals*, 30 A.3d 789, 798 (D.C. 2011). Likewise, we have observed that the existence of an enforceable property interest in continued employment is based on whether the employee has a "legitimate claim of entitlement to job tenure," as opposed to at-will

---

[12] The DC RUPA applies to many different kinds of businesses carried out in partnership form. In this opinion we address only law partnerships.

13

employment. *Pratt v. Univ. of the District of Columbia*, 691 A.2d 158, 159-60 (D.C. 1997) (per curiam) (citation omitted).


## IV.    Discussion


The crux of the Trustee's argument is that a former partner who leaves the firm, but who continues to work on hourly-billed client matters that began at the firm, has a continuing duty of loyalty to remit to the former firm the fees earned from such matters. For those Howrey partners who left with pending matters prior to Howrey's dissolution, the Trustee's argument is based on the statutory language that a dissociated partner has a continued duty of loyalty "with regard to matters arising and events occurring before the partner's dissociation." D.C. Code § 29-606.03(b)(3). The Trustee argues that "matters arising" necessarily includes pending hourly-billed client matters. Likewise, for those Howrey partners who left the firm with pending matters after its dissolution, the Trustee argues that those former partners have a duty to remit fees as part of the dissolved firm's "winding up" process under the unfinished business rule, which he claims this court is bound to follow and apply based on our holding in *Beckman v. Farmer*, 579 A.2d 618 (D.C. 1990), and its progeny.

14

In both scenarios, the Trustee argues hourly-billed client matters that started at the partnership constitute partnership property. If hourly-billed client matters are not considered Howrey's property, then its former partners would have no duty of loyalty under the D.C. RUPA to account for future fees earned from such matters to Howrey, regardless of when they left. For the reasons discussed more fully below, we conclude that hourly-billed client matters are not partnership property. Moreover, with respect to dissolved firms, a person has no duty to offer his [or her] former partners or partnership a business opportunity which arises after the partnership has terminated." *M.R. Champion, Inc. v. Mizell*, 904 S.W.2d 617, 618 (Tex. 1995). We further conclude that the unfinished business rule stated in this court's decision in *Beckman* does not apply in these circumstances.

**A. Hourly-billed law firm client matters are not property under District of Columbia common law.**

In determining whether hourly-billed client matters constitute law firm property, we find persuasive the decisions of New York's and California's high courts, which have considered this precise issue.[13] The New York and California cases also pertained to the bankruptcy proceedings of large law firms. *See In re*

---

[13] New York's partnership law is based on the model UPA, while California's partnership law is based on the model RUPA. *See* Douglas R. Richmond, *Whither (Wither?) the Unfinished Business Doctrine*, 20 Chap. L. Rev. 283, 299, 309 (2017).

15

*Thelen LLP*, 24 N.Y.3d 16, 22-23 (2014) ("*Thelen*"); *Heller Ehrman LLP v. Davis Wright Tremaine LLP*, 411 P.3d 548, 550 (Cal. 2018) ("*Heller*"). In resolving the respective bankruptcy proceedings, the Court of Appeals of New York and the Supreme Court of California were asked by the Second Circuit and the Ninth Circuit, respectively, whether pending hourly-billed client matters were considered partnership property under their respective state laws. The New York and California courts both definitively held that hourly-billed client matters were not the property of the law firm. *Thelen*, 24 N.Y.3d at 22; *Heller*, 411 P.3d at 550. At the heart of the two courts' holdings is the consensus that hourly-billed client matters are not partnership property because, under established rules of attorney-client relations and professional responsibility, a law firm does not own client legal matters, clients own their matter – clients have the right to transfer their matters to new counsel, to terminate representation, and to hire new counsel. *Thelen*, 24 N.Y.3d at 28; *Heller*, 411 P.3d at 550. Because clients retain all rights associated with representation of their legal matters, law firms do not have a reasonable expectation, or "legitimate claim of entitlement," *Heller*, 411 P.3d at 554 (citation omitted), that they will continue working on these client matters and earn future fees. *See also Thelen*, 24 N.Y.3d at 28. Law firm expectations of continued work are "best understood as essentially unilateral," *Heller*, 411 P.3d at 554, and "too contingent in nature and

16

speculative to create a present or future property interest," *Thelen*, 24 N.Y.3d at 28 (citation omitted).

The Court of Appeals of New York observed that a client who signs a retainer agreement retains the "ability to terminate the relationship at any time without penalty." *Thelen*, 24 N.Y.3d at 28 (emphasis and citation omitted); *see also In re Ryan*, 670 A.2d 375, 379 (D.C. 1996) (observing that "an attorney's ethical duties to a client arise not from any contract but from the establishment of a fiduciary relationship between attorney and client"). Instead, a client's obligation to the law firm is to compensate the firm for the "fair and reasonable value of the *completed services*." *Thelen*, 24 N.Y.3d at 28 (citation omitted). A law firm's property interest extends only to fees earned from work already performed. The Supreme Court of California observed that "reasonable" clients and lawyers would not likely share the view that a dissolved law firm, which "cannot work" and has "ceased operations," is entitled to fees from "hourly matters on which it is *not* working." *Heller*, 411 P.3d at 554. The California court noted that, while it is true that firm partners pool resources and human capital and it is therefore "difficult to deny that lawyers in the same firm would ordinarily feel some shared interest in each other's work," such a shared interest is not the same as a property interest. *Id.*

17

Under the District of Columbia's Rules of Professional Conduct, it is similarly well understood that clients own their legal matters. *See* D.C. Ethics Committee Opinion 372 (2017) ("A key principle governing the ethical obligations of a law firm and its members in connection with the process of dissolving the firm is that the clients do not belong to either the law firm or its members."). A client has an almost "unfettered right" to choose counsel, and the "right to discharge an attorney." *In re Mance*, 980 A.2d at 1203 (citing D.C. R. Prof'l Conduct 1.7(b), cmt. 8 ("Clients have broad discretion to terminate their representation by a lawyer and that discretion may generally be exercised on unreasonable as well as reasonable grounds.")). Thus, a law firm has no right to transfer the client's legal matter to another firm or attorney without the client's express consent. *See* D.C. Ethics Committee Opinion 273 (1997) (stating that D.C. R. Prof'l Conduct 1.4 "require[s] the lawyer to communicate his prospective change of affiliation to the client, but such communication must occur sufficiently in advance of the departure to give the client adequate opportunity to consider whether it wants to continue the representation by the departing lawyer and, if not, to make other representation arrangements"); D.C. Ethics Committee Opinion 372 (stating that clients have the right to choose to continue to be represented by a member of the dissolving firm, or be represented by another lawyer, or by another firm). In short, the law firm does not hold the bundle of rights that would give rise to a "property" interest in client

legal matters. *See United States v. Craft*, 535 U.S. 274, 278 (2002) (describing "property" as a "bundle of sticks," i.e., "a collection of individual rights which, in certain combinations, constitute property"); Property, *Black's Law Dictionary* ("These rights include the right to possess and use, the right to exclude, and the right to transfer."). Even where the client engagement calls for advanced fees or costs, our Rules of Professional Conduct expressly state that "unearned fees and unincurred costs" are the "property of the client" until such fees and costs are earned or incurred, unless the *client* provides for a different arrangement. D.C. R. Prof'l Conduct 1.15(e). Attorneys are thus required to return to the client "any unearned portions of advanced legal fees and unincurred costs" upon termination of representation. *Id.*; *see also* D.C. R. Prof'l Conduct 1.16(d); *In re Hallmark*, 831 A.2d 366, 372 (D.C. 2003).

The Trustee's interpretation runs counter to the principles underlying these Rules. Absent the client's consent, to allow a law firm to share in profits that it has not earned would reduce clients' freedom of choice. As the court in *Heller* stated:

> To allow a firm like Heller to share in fees paid by a client who has discharged it (and paid it in full) necessarily reduces the fees available to compensate the client's substituted counsel of choice. In such a situation, clients with pending matters who prefer any of the firms that hired Heller's former shareholders may—in recognition of the fact that these firms will not receive the full fees paid and therefore will not be as incentivized to work on their matters—opt for second-choice counsel.

411 P.3d at 555-56.

The Trustee's interpretation would also restrict attorneys' rights to practice and mobility, which would also violate the Rules of Professional Conduct. *See* D.C. R. Prof'l Conduct 5.6 (partnership agreement shall not restrict "the rights of a lawyer to practice after termination of the relationship").[14] It would make it difficult for dissociated partners or partners who stay past dissolution to continue their practice elsewhere because subsequent profits earned on unfinished client matters would have to be remitted to the former firm, making them less attractive to a new firm.

---

[14] Further, D.C. Ethics Committee Opinion 368 (2015) states:

> A law firm may not provide for or impose liquidated damages on a lawyer who, after departure, competes with the firm. A firm and a departing lawyer may have liability to one another, though, for work done before the lawyer's departure. Also, a firm may not restrict a departed lawyer's subsequent professional association or affiliation with partners or employees of the firm, except insofar as such activity is subject to legal limitations outside the Rules of Professional Conduct. Whether a choice of law provision in a partnership or employment agreement can avoid application of the D.C. Rule governing lawyer departures usually will depend on the location where the departing lawyer principally practiced.

20

Taken together, applicable principles lead us to conclude that a law firm has no property interest in hourly-billed client matters, and therefore no right to future fees earned from such matters by former partners who leave the partnership and go on to join other firms. A law firm does not have a "legitimate claim of entitlement" to hourly-billed client matters because it is the clients who retain the right to control the representation. A law firm's belief that it will continue working on such hourly-billed client matters into the future constitutes no more than an "abstract need" or "unilateral expectation." *Roth*, 408 U.S. at 577.[15]

---

[15] A question *sub silentio* arises from our holding. If pending client matters are not considered property of the law firm, then can law firms assert claims such as tortious interference with contract and prospective advantage when a third-party law firm or former partners induce the client to end his or her relationship with the firm? Both theories of tortious interference, with contract and with prospective advantage, are based on the idea that contracts and business expectancies constitute property interests protected from unjust interference. *See Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978) (stating that "business expectancies, not grounded on present contractual relationships but commercially reasonable to anticipate," are considered property). There is no case law from this jurisdiction directly on point, but reviewing case law from other jurisdictions, we note that some courts have allowed these types of tortious interference claims, while others have severely restricted them in the attorney-client context. *Compare e.g.*, *Dowd v. Gleason*, 816 N.E.2d 754, 768 (Ill. App. Ct. 2004) (concluding that a tortious interference claim is actionable despite the fact that the relationship between an attorney and client is terminable at will because the claim is not dependent upon an enforceable contract, but rather on an existing relationship) *with Nostrame v. Santiago*, 61 A.3d 893, 895-96 (N.J. 2013) (concluding that only in very rare circumstances will the court find that an attorney has engaged in behavior constituting tortious interference in attracting clients from other attorneys, due to the "paramount importance" of a client's right to choose counsel). We need not resolve this question now, but merely note this open question in light of our holding.

### B. A former partner has no duty of loyalty to remit profits earned on hourly-billed client matters.

In light of our holding that hourly-billed client matters are not partnership property, former partners owe no duty to their former firms to remit new profits earned on hourly-billed client matters in either the pre- or post-dissolution context. A former partner owes no duty to provide the former partnership with benefits to which the partnership has no legal entitlement, as this would constitute unjust enrichment. *New World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005). We therefore answer the Ninth Circuit's questions pertaining to a partner's duty of loyalty under the District's partnership act as follows.

First, a dissociated partner's duty of loyalty "continue[s] only with regard to matters arising and events occurring before the partner's dissociation." D.C. Code § 29-606.03(b)(3). We construe this language to mean that a dissociated partner's duty to account back to the former firm is limited to fees earned from work performed before the partner's dissociation.[16]

---

[16] The Trustee also cites to the comments section of the 1997 edition of the model RUPA § 603, which the District has codified as D.C. Code § 29-606.03, pertaining to the effects of a partner's dissociation. The Trustee points to a specific example from the RUPA comments: "[A] partner who leaves a brokerage firm may

22

Second, we hold that a dissolved partnership is not entitled to fees earned by former partners who continue to work on hourly-billed client matters. A former partner's duty of loyalty is limited to remitting profits earned from participating in the conduct and winding up of the dissolved partnership. D.C. Code § 29-604.07(b)(1). By statute, "winding up" of the partnership business includes acts to preserve partnership rights and property, prosecute and defend actions, settle or transfer partnership business, or distribute assets. D.C. Code § 29-608.03(c). This means limited acts that are "necessary to (1) preserve legal matters for transfer to the client's new counsel or the client itself, (2) effectuate such a transfer, and (3) collect on work done pretransfer." *Heller*, 411 P.3d at 557. The duty of loyalty in this context, however, does not extend to "substantive legal work done on hourly fee

immediately compete with the firm for new clients, but *must exercise care in completing on-going client transactions and must account to the firm for any fees received from the old clients on account of those transactions . . . ." Id.* § 603, cmt. 2 (emphasis added). Analogizing the brokerage example to the law firm context, the Trustee claims that a dissociated partner of a law firm, likewise, has a continuing duty of loyalty to account to the law partnership for any fees earned from matters that began at the partnership, but that were not completed at the time of dissociation. This argument is without merit, however, because, under the District of Columbia's definition of property, future fees earned on hourly-billed client matters are not partnership property. This continuing duty of loyalty would also be incongruous with the fact that law-firm clients have the right to choose counsel, and have broad discretion to terminate representation. *See In re Mance*, 980 A.2d at 1203 (citing D.C. R. Prof'l Conduct 1.7(b), cmt. 8). Accordingly, the brokerage firm example used in RUPA § 603, cmt. 2 is inapplicable to law firms.

matters to continue what was formerly the business of a dissolved partnership." *Id.* A dissolved partnership can no longer engage in new business following dissolution. *See Berk v. Sherman*, 682 A.2d 209, 213 (D.C. 1996) (observing that dissolution prevents the partnership from engaging in new transactions). This limited duty of loyalty in the winding up process is further restricted by D.C. Code § 29-604.01(k), which states that a partner who participates in the winding up of the partnership business is entitled to "reasonable compensation for services rendered." What constitutes "reasonable compensation" is ultimately a factual question, but regardless of the amount, partners who participate in the winding up process are entitled to more remuneration than those partners who do not participate in the winding up process.

### B. The "unfinished business rule" is inapplicable to hourly-billed matters.

Only two decisions of this court have recognized the unfinished business rule, whereby profits from contingency fee matters earned post dissolution are remitted back to the dissolved firm for distribution among partners as part of the winding up process: the aforementioned *Beckman v. Farmer* and *Young v. Delaney*, 647 A.2d 784 (D.C. 1994). *Beckman* involved a contentious dissolution of a three-partner law firm. One of the primary questions before the court was whether all three partners

of the dissolved firm were entitled to their respective partnership share of the profits from a large contingency fee client matter that was earned post dissolution. 579 A.2d at 622. Two of the partners argued that a third partner was not entitled to his full share because he did not work on the matter. *Id.* at 634. Interpreting provisions of the District's Uniform Partnership Act ("D.C. UPA"), which has since been abrogated and replaced by the D.C. RUPA, we disagreed.[17] We observed that, under the provisions of the D.C. UPA, upon dissolution, each partner of the dissolved partnership carried a fiduciary obligation to "account to the partnership for any benefits, and hold as a trustee for it any profits derived by him without the consent of the other partners from *any transaction connected with the . . . conduct, or liquidation of the partnership.*" *Id.* at 636 (emphasis added) (quoting D.C. Code § 41-120 (repealed 1997)). We further noted that a partner can "bind the partnership after dissolution by . . . completing transactions unfinished at dissolution." *Id.* (quoting D.C. Code § 41-134(a)(1) (repealed 1997)). We held that "any profits

---

[17] As a preliminary matter, we noted that, because, under the D.C. UPA, a partnership dissolves when "any partner ceas[es] to be" a part of the partnership, the law firm of Beckman, Farmer & Kirstein dissolved "by the express will of Beckman," when he notified Farmer that he wanted to end their association. *Beckman*, 579 A.2d at 634; *see also* D.C. Code § 41-128 (repealed 1997) (stating that, under the D.C. UPA, "[t]he dissolution of a partnership is the change in relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business"). The general rule under the D.C. RUPA is that a partner's dissociation does not dissolve the partnership. *See* D.C. Code § 29-608.01.

25

derived from completion of such unfinished business inure to the partner's benefit, even if received after dissolution." *Id*. "[P]ending cases are uncompleted transactions requiring winding up after dissolution, and are . . . assets of the partnership subject to post-dissolution distribution." *Id.* Accordingly, we concluded that "all work performed on partnership business unfinished at the date of dissolution," including the contingent fee case, "was done for the benefit of the dissolved partnership," *id.* at 639, and that the third partner was thus entitled to his share of the contingent fee award.

In *Young*, we did not specify how the pending cases at issue were billed, as that issue was not relevant in resolving the case. Thus it is fair to say that, in this jurisdiction, application of the unfinished business rule has been limited to contingency fee-based client matters.[18] None of our prior cases have squarely confronted the issue before us on whether hourly-billed client matters constitute "property." Contrary to the Trustee's argument, we are not bound by *Beckman* or

---

[18] The United States District Court for the District of Columbia has previously held that profits from hourly-billed client matters constituted property of the partnership that required distribution to former partners upon dissolution. *Robinson v. Nussbaum*, 11 F. Supp. 2d 1, 3 (D.D.C. 1997). The district court's decision is distinguishable because it was based on the abrogated D.C. UPA. We also decline to follow it because the court did not reconcile how hourly-billed client matters can constitute partnership property when such a conclusion would contradict established rules of attorney-client relations.

*Young*. The Trustee argued in his brief that the unfinished business rule should be extended to client matters in the pre-dissolution context. But because we conclude that hourly-billed client matters are not property of the firm, former partners have no duty to account for fees earned from continuing to work on such matters. Moreover, in *Beckman*, we specifically said that the unfinished business rule does not apply where dissociation does not lead to dissolution of the partnership, and the business is continued by the remaining partners. 579 A.2d at 634. [19] Consistent with

*M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971), and stare decisis, and in light of our holding today, we limit the unfinished business rule recognized in *Beckman* and *Young* to instances in which the dissolved partnership seeks remuneration of contingency fees earned by former partners after dissolution. It is a fundamental principle of appellate review that, "for purposes of binding precedent, a holding is a narrow concept, a statement of the outcome accompanied by one or more legal steps or conclusions along the way that—as this court and others have repeatedly held—

---

[19] The Trustee cites to the Eleventh Circuit's decision in *Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657, 661-62 (11th Cir. 2013) (per curiam) ("*Buckley*"), in support of his claim that the unfinished business rule should apply in the pre-dissolution context. In *Buckley*, the Eleventh Circuit concluded that, under Florida's formulation of the RUPA, "when a partner exits the initial firm and the client follows, the initial firm is entitled to the entire contingency fee, less the former partner's partnership share." *Id.* at 661. However, the Eleventh Circuit did not choose to publish this case, and therefore it has significantly reduced persuasive value. *Cf. In re Grant*, 635 F.3d 1227, 1231 (D.C. Cir. 2011).

27

are 'necessary' to explain the outcome; other observations are dicta." *Parker v. K &*
*L Gates, LLP*, 76 A.3d 859, 873 (D.C. 2013) (Ferren, J., concurring for a majority of
the court).

Our prior decision in *Beckman* is also distinguishable on both factual and legal
grounds. On the facts, *Beckman* primarily involved the duty to account for profits
earned from an unfinished contingency fee matter, rather than the pending hourly-
billed client matters that are at issue in this case. *See* 579 A.2d at 622 (referring to
dispute "involving a large contingent fee"); *id.* at 639 n.27 (noting that an issue
before court is "whether a pending contingent fee case is an asset of a dissolved
partnership").[20] The high court in California also distinguished contingency fee cases
in answering whether a law firm has a property interest in hourly-billed client
matters. The court in *Heller* recognized that hourly-billed matters and contingency
fee matters may deserve different treatment. 411 P.3d at 558. One reason justifying
different treatment is that a dissolved law firm that continues to work on hourly-
billed client matters goes beyond what is necessary to transfer the matters or collect
on work done, since the dissolved firm has already been paid in full for work
completed. *Id.* "[T]he situation might be different in the context of contingency fee

---

[20] *Beckman*, however, did involve what appears to be a small non-contingent
fee arising from the administration of a client estate.

28

matters," the court said, because what actions constitute winding up of the business may be different "against a backdrop in which the dissolved firm had yet to be paid for the work it performed and will not be paid until the matter is resolved." *Id.*[21] In our view, the differences between contingency fee cases and hourly-billed cases are sufficiently material that our conclusion in one does not bind us in the other.

On the law, *Beckman* is distinguishable because the legal underpinning for that decision, under the D.C. UPA, has been substantially revised. The court in *Beckman* concluded that contingency fee cases constitute assets of the firm, and that fees earned subsequent to dissolution inure to the firm based on a review of the provisions of the D.C. UPA. *Young* was also decided under the former D.C. UPA. Since then the D.C. UPA has been replaced by the D.C. RUPA, which differs from the prior act in numerous respects. For example, under the D.C. RUPA, "a dissociation of a partner with the partnership does not result in the dissolution of the partnership and winding up of its affairs, unless there is an express intent to do so." D.C. Council Report on Bill 11-344 (Attached Statement of James C. McKay, Jr. at 3-4). The D.C. RUPA also liberalized the so-called "No Compensation Rule" by

---

[21] We understand there are numerous, complex billing methods employed by law firms, many of which are a hybrid contingency fee and hourly-fee arrangement. The treatment to give such hybrid fee arrangements is not before the court today. *See* Litigation Management Handbook § 4:17: Pros and Cons of Various Pricing Methods—Hourly Fee (2018).

allowing compensation for services performed during winding up. D.C. Code § 29-604.01(k), pertaining to a partner's rights and duties, states, "A partner shall not be entitled to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business of the partnership." *Compare with* D.C. Code § 41-117(6) (repealed 1997) ("No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."). These current provisions directly contradict our observations in *Beckman* that, under the D.C. UPA, a partnership dissolves when "any partner ceas[es] to be" a part of the partnership, 579 A.2d at 634, and that, generally, "a partner winding up the business of a partnership rightfully dissolved . . . cannot recover compensation for completing unfinished business above his distributive share," *id.* at 640 (citing D.C. Code § 41-117(6) (repealed 1997)).

More critically, the D.C. UPA expressly stated that a partner's duty to account extends to "any transaction connected with the . . . conduct, or liquidation of the partnership." *Beckman*, 579 A.2d at 636 (quoting D.C. Code § 41-120 (repealed 1997)) (alteration in original). It further stated that a winding up partner can bind the dissolved partnership by any act appropriate for "completing transactions

30

unfinished at dissolution." *Id.* (quoting D.C. Code § 41-134(a)(1) (repealed 1997)). Together, these provisions of the D.C. UPA made explicit that a partner's duty of loyalty, as part of the winding up process, included accounting for earnings from completing pending cases, which it considered to be "unfinished transactions requiring winding up after dissolution." *Id*. The corresponding provisions under the D.C. RUPA are different. The D.C. RUPA now merely states that a partner post dissolution may bind the partnership by acts that are "appropriate for winding up the partnership activities or affairs." D.C. Code § 29-608.04(1). There is no reference in the D.C. RUPA to "completing transactions unfinished at dissolution." D.C. Code § 41-134(a)(1) (repealed 1997). Further, the definition of "winding up" in the D.C. RUPA is limited to activities that are intended to "preserve the partnership activities or property," "prosecute and defend actions and proceedings," "settle and close the partnership's business," "dispose of and transfer the partnership's property," "discharge the partnership's liabilities," distribute the assets of the partnership," "settle disputes by mediation or arbitration," and "perform other necessary acts." D.C. Code § 29-608.03(c).[22] Accordingly, the legal underpinnings for *Beckman*'s

_____

[22] Delaware's Revised Uniform Partnership Act, which served as the basis for the model RUPA, RUPA § 803, cmt., provides that a person winding up a partnership may "prosecute and defend suits, . . . gradually settle and close the partnership's business or affairs, dispose of and convey the partnership's property, discharge or make reasonable provision for the partnership's liabilities, distribute to the partners . . . any remaining assets of the partnership, and perform other acts which

31

decision have been substantially changed since the District's adoption of the D.C. RUPA.[23]

## V.     Conclusion

We hold that law firms have no property interest in hourly-billed client matters. Accordingly, under the D.C. RUPA partners have no duty to account to their former law firms for fees earned from continuing to work on hourly-billed client matters after their separation from the firm.  Partnerships can depart from most of these statutory provisions of the D.C. RUPA through their partnership agreements. *See* D.C. Code § 29-601.04 (a) (providing that, with some expressly stated exceptions, "relations among the partners and between the partners and the partnership shall be governed by the partnership agreement"), -601.04(c)(2)(A) (providing that unless "manifestly unreasonable," the partnership agreement may "[r]estrict or eliminate" aspects of a partner's duty of loyalty).

---

are necessary or convenient to the winding up of the partnership's business or affairs." Del. Code Ann. tit. 6, § 15-803 (2019).

[23] In light of the substantial changes to the District's partnership law, it is unclear whether our decision in *Beckman*, decided in 1990 under the D.C. UPA, remains good law even in the context of contingency fees earned post dissolution. Regardless, that is not an issue we need to decide today, and we leave for another case whether, in light of the D.C. RUPA, former partners have a duty to remit fees earned from contingency cases post-dissolution to the dissolved partnership.

32

A partner's duty of loyalty under the D.C. RUPA still requires a partner to account to the partnership for "any property, profit, or benefit" incurred in conducting partnership business or through the "winding up" process upon its dissolution. D.C. Code § 29-604.07(b)(1). A partner can neither appropriate a partnership opportunity, act on behalf of a party with an adverse interest to the partnership, or compete with the partnership before dissolution or dissociation. *Id.* § 29-604.07(b)(1)-(3). A former partner who has dissociated from the firm has a limited duty of loyalty "with regard to matters arising and events occurring before the partner's dissociation." D.C. Code § 29-606.03(b)(3). The disassociating partner must account to the partnership for fees earned from work performed on hourly-billed client matters prior to dissociation. Likewise, a dissolved partnership is entitled to "property, profit[s], or benefit[s]" gained from winding up of the business, which includes conduct that, *inter alia*, preserves the partnership activities or property, settles activities, transfers property, or discharges liabilities. D.C. Code § 29-604.07(b)(1); D.C. Code § 29-608.03(c).[24] Winding up of the business does not include new work on hourly-billed client matters that the partnership can no longer undertake as a result of dissolution. *See* D.C. Code § 29-608.01.

---

[24] This duty is further limited by D.C. Code § 29-604.01(k), which states that a partner who participates in the winding up of the partnership business is entitled to "reasonable compensation for services rendered."

33

Having answered these questions, we direct the Clerk of the Court to transmit a copy of this opinion to the United States Court of Appeals for the Ninth Circuit and to the parties.

*So ordered.*